The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Peter HOFFMAN, Defendant-Appellant.

No. 81SA507.

Supreme Court of Colorado, En Banc.

Dec. 13, 1982.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Susan P. Mele, Nathan B. Coats, Asst. Attys. Gen., Denver, for plaintiff-appellee.

Miller & Gray, P.C., Daniel C. Hale, Boulder, for defendant-appellant.

ROVIRA, Justice.

This is an appeal by the defendant, Peter Hoffman, from his conviction of conspiracy to commit the crime of manufacture of a dangerous drug. Because constitutional issues were raised, we accepted a transfer of jurisdiction pursuant to section 13–4–110(1)(a), C.R.S.1973. We reverse and remand with directions to dismiss. Crim.P. 29.

### I.

The defendant was charged with attempt to manufacture a dangerous drug, dispensing a dangerous drug, and conspiracy to commit the crime of manufacture of a dangerous drug. Sections 12–22–404, 12–22–412 and 18–2–201, C.R.S.1973.[1] The charge of dispensing a dangerous drug was severed for purposes of trial and was dismissed after the defendant was found guilty of the conspiracy charge.

The events giving rise to the charges against defendant commenced in June 1977 when agents of the San Diego office of the Drug Enforcement Administration (DEA) received information that the defendant had ordered a 55-gallon drum of the chemi-

cal orthotoluidine, which was to be delivered to his home in San Diego. After the delivery on July 21, 1977, the DEA placed the defendant under surveillance.

Later in July, the defendant received two more 55-gallon drums of orthotoluidine and five barrels of acetic anhydride and anthranilic acid. The DEA agents became aware of the defendant's plan to move and applied to the United States magistrate in San Diego for permission to replace a later delivered drum of chemicals with a specially made drum. This drum contained a built-in tone transmitter which would facilitate surveillance when the drum was moved.

The defendant enlisted the aid of Michael Conley to move the chemicals to Colorado. When he arrived in Denver, Conley, using a fictitious name, placed the chemicals in a rented storage locker.

For the next two months, the defendant, Conley, and Richard Rahn lived in a house on Peterson Street in Fort Collins. Rahn, using a fictitious name, purchased chemical supplies, including glassware and tubing, and stored them at the Peterson Street address.

On November 29, 1977, the chemicals stored in the rented locker were moved to Fort Collins by the defendant, Conley, and Rahn, and placed in the garage directly behind the Peterson Street house. The next day a search warrant was executed, and the drums, along with funnels, screens, pumps, sulfuric acid, xylene, sodium hydroxide, and isopropyl alcohol were seized. The defendant, Conley, and Rahn were arrested.

At trial,[2] the defendant admitted ownership of the chemicals and other items seized. He also acknowledged that orthotoluidine, acetic anhydride, and anthranilic acid were the three primary chemicals necessary to

---

1. Sections 12–22–401 to 12–22–415, C.R.S.1973 (1978 Repl.Vol. 5), the Colorado Dangerous Drug Act, was repealed in 1981. L. 81, P. 741, § 39, effective July 1, 1981. The Colorado Controlled Substances Act, section 12–22–301 et seq., C.R.S.1973 (1978 Repl.Vol. 5, 1982 Supp.), was adopted in 1981.

2. Prior to trial, defendants Conley and Rahn entered pleas of guilty to conspiracy to commit

manufacture methaqualone,[3] and that he planned to sell kits or packages of those chemicals and advertise the kits for sale in *High Times*, a "counter-culture" magazine. The defendant also admitted that it was possible that people who would want to produce methaqualone would be reading his advertisements. The defendant denied any intent to manufacture methaqualone although he did opine that a fourteen-year-old could possibly find the chemical formula for methaqualone from comic books which explained the syntheses of various compounds.

The prosecution sought to prove that the defendant's efforts to produce kits or packages of the chemicals and sell them was an attempt to manufacture a dangerous drug. Further, it also sought to prove that the arrangement with Conley and Rahn established a conspiracy to manufacture a dangerous drug, methaqualone.

The defendant's theory of the case at trial was the lack of an unlawful agreement and lack of specific intent to enter into an unlawful agreement to manufacture methaqualone or attempt to manufacture a dangerous drug. After a trial to a jury, the defendant was acquitted of attempt to manufacture a dangerous drug, but was convicted of conspiracy to commit the crime of manufacture of a dangerous drug.

The defendant has raised a number of issues on appeal, but our resolution in his favor of his claim that he was entitled to a judgment of acquittal on the conspiracy charge because his acquittal on the charge of attempt is inconsistent with the finding of guilty on the conspiracy charge obviates the necessity of considering those issues.

## II.

The basis of defendant's claim that he was entitled to a judgment of acquittal on the conspiracy[4] charge after the jury acquitted him on the attempt[5] charge is that the evidence which supported the attempt charge was the same "fund of evidence" as that which supported the conspiracy charge.

In *Robles v. People,* 160 Colo. 297, 417 P.2d 232 (1966), we held that acquittal of a substantive offense forecloses conviction of conspiracy to commit that offense if the same evidence relied upon to establish the conspiracy is that which proved insufficient to establish the substantive offense. Later, in *People v. Berry,* 191 Colo. 125, 550 P.2d 332 (1976), where the defendant was charged with an attempt to commit aggravated robbery and conspiracy to commit aggravated robbery, we extended the rule of *Robles* to include inchoate offenses. We

---

the crime of manufacturing a dangerous drug and received deferred sentences.

**3.** Methaqualone, also known by the trade name of Quaalude, is defined as a "depressant drug" pursuant to section 12–22–403(5)(a), C.R.S. 1973 (1978 Repl.Vol. 5). Depressant drug is included within the definition of "dangerous drug" in section 12–22–403(4), C.R.S.1973 (1978 Repl.Vol. 5).

**4.** Section 18–2–201(1) and (2), C.R.S.1973 (1978 Repl.Vol. 8) state:
"**Conspiracy.** (1) A person commits conspiracy to commit a crime if, with the intent to promote or facilitate its commission, he agrees with another person or persons that they, or one or more of them, will engage in conduct which constitutes a crime or an attempt to commit a crime, or he agrees to aid the other person or persons in the planning or commission of a crime or of an attempt to commit such crime.
"(2) No person may be convicted of conspiracy to commit a crime, unless an overt

act in pursuance of that conspiracy is proved to have been done by him or by a person with whom he conspired."

**5.** Section 18–2–101(1), C.R.S.1973 (1978 Repl. Vol. 8), provides:
"**Criminal attempt.** (1) A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense. A substantial step is any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense. Factual or legal impossibility of committing the offense is not a defense if the offense could have been committed had the attendant circumstances been as the actor believed them to be, nor is it a defense that the crime attempted was actually perpetrated by the accused."

also stated that where there was no independent evidence, apart from the attempted commission of the robbery, to establish a conspiracy, and where the jury acquitted the defendant of attempted robbery, the verdict of guilty on the conspiracy charge could not stand because the verdicts were inconsistent.

The *Robles* rule [6] has been applied in a number of cases, and a review of our decisions demonstrates the necessity of our examination of the record to determine whether there was independent evidence relating to the conspiracy in addition to that bearing directly upon the attempt to manufacture. *See People v. Albers,* 196 Colo. 66, 582 P.2d 667 (1978); *People v. Samora,* 188 Colo. 74, 532 P.2d 946 (1975); *People v. Coca,* 185 Colo. 10, 521 P.2d 781 (1974); *Armijo v. People,* 170 Colo. 411, 462 P.2d 500 (1969).

The People agree that the same fund of evidence cannot support a conspiracy conviction and simultaneously an acquittal of the attempt. However, they contend that the evidence relating to the conspiracy was substantially different from that offered to prove the attempt, and therefore the *Robles* rule is not applicable. Specifically, they rely on the testimony of Conley and Rahn to establish the agreement or understanding of the parties which, in turn, would support the conspiracy conviction.

Our review of the record does not support the People's contention. Conley testified that he and the defendant had been roommates for two years and the defendant enlisted his aid in transporting the orthotoluidine, acetic anhydride, and anthranilic acid from California to Colorado. He admitted that the defendant gave him the opportunity to invest in the enterprise. He knew that methaqualone was a dangerous drug, and he thought that it could be made with the above-named chemicals. Conley also testified that the market for the kits or packages would be the persons in the counterculture and his use of a fictitious name in renting the storage locker was because of his concern about the DEA.

Rahn's testimony was limited and only established that he did not pay his share of the rent on the Fort Collins house in exchange for running errands and buying chemical equipment and supplies. He also admitted to using a fictitious name in signing a receipt for the chemical supplies and helping the defendant transfer some of the chemicals from the large drums into smaller containers.

The People contend that the agreement between the defendant and Conley and the use of fictitious names by Conley and Rahn were sufficient to show a conspiracy and were separate from the other evidence of the defendant's attempt to manufacture a dangerous drug. The evidence of attempt which the People distinguish from the evidence of conspiracy includes the defendant's acts of ordering and receiving the chemicals in California, arranging to transport the chemicals to Colorado, moving the chemicals from the storage locker in Denver to Fort Collins, and placing the chemicals into smaller containers.

In our view, the record establishes one transaction, and the elements of the crimes charged are such that acquittal of one is inconsistent with conviction of the other. *People v. Berry, supra.* No independent evidence, apart from the attempt to manufacture a dangerous drug, exists to establish a conspiracy. The verdicts are inconsistent, and under the rule of *Robles,* the conspiracy verdict must be set aside.

We reverse and remand with directions that the defendant's motion for judgment of acquittal, pursuant to Crim.P. 29, be granted.

LOHR, J., dissents.

---

**6.** The *Robles* rule has been codified. Section 18–2–206(2), C.R.S.1973 (1978 Repl.Vol. 8), provides that:

"A person may not be convicted of conspiracy to commit an offense if he is acquitted of the offense which is the object of the conspiracy where the sole evidence of conspiracy is the evidence establishing the commission of the offense which is the object of the conspiracy."

LOHR, Justice, dissenting.

The majority holds that the defendant's conviction of conspiracy to manufacture a dangerous drug must be reversed because the jury's verdict of guilty of that charge is inconsistent with its verdict of not guilty on the charge of attempt to manufacture a dangerous drug. I disagree and therefore respectfully dissent.

The majority relies on the rule established in *People v. Robles,* 160 Colo. 297, 417 P.2d 232 (1966), now codified in section 18–2–206(2), C.R.S.1973, to reach its conclusion.[1] The rationale for this rule was succinctly explained in *Robles,* where the defendant was acquitted of robbery but convicted of conspiracy to commit robbery:

> The very same evidence which the jury apparently did not believe was sufficient to prove the defendant participated in the robbery was the *only* evidence which could prove him guilty of conspiracy.

*Id.* at 301, 417 P.2d 232, 234 (1966) (emphasis in original). *See also Armijo v. People,* 170 Colo. 411, 462 P.2d 500 (1969). As we said in *People v. Coca,* 185 Colo. 10, 13, 521 P.2d 781, 783 (1974), "[a] jury will not be permitted to believe the evidence for the purpose of the conspiracy and disbelieve it for the purpose of the substantive crime."

The *Robles* rule has common application in conspiracy cases, where the only evidence of the agreement necessary to the crime of conspiracy often is the circumstantial evidence provided by the commission of the substantive offense itself.[2] The case before us is different. Criminal attempt requires that the defendant "[engage] in conduct constituting a substantial step toward the commission of the offense," section 18–2–101(1), C.R.S.1973 (1978 Repl.Vol. 8), whereas conspiracy requires only that an "overt act in pursuance of that conspiracy" be established, section 18–2–101(1), C.R.S.1973 (1978 Repl.Vol. 8). The jury might well have concluded that the conduct of the defendant and other participants went far enough to establish an overt act but did not rise to the level of a substantial step.

Additionally, the defendant's associate Conley testified to the existence of his agreement with the defendant to undertake the drug manufacturing enterprise, and this evidence is separate from the evidence that the defendant's activities in pursuing the drug manufacturing and distribution scheme. The jury might have believed the evidence about the agreement but disbelieved some of the separate evidence about the acts accomplished in furtherance of the scheme. In this respect the present case is like *People v. Albers,* 196 Colo. 66, 582 P.2d 667 (1978), where we upheld a conspiracy conviction against a *Robles* rule challenge because the testimony of the defendant's co-conspirators provided ample evidence of conspiracy independent of that establishing commission of the substantive offense.

I would reject the defendant's *Robles* challenge and would address his other assignments of error.

1. As the majority notes, this rule was extended to inchoate crimes in *People v. Berry,* 191 Colo. 125, 550 P.2d 332 (1976).

2. For example, in *People v. Berry, supra,* involving the two inchoate crimes of attempt and conspiracy as in the present case, the prosecution's only evidence of conspiracy to commit robbery was that two men had entered a store brandishing pistols but fled after they were unsuccessful in obtaining money. Without any specific evidence of an agreement, the jury was allowed to infer from the acts of these two men that they had an agreement to commit robbery. However, since Berry was acquitted of the attempt charge, the jury necessarily believed his alibi defense, and the jury could not properly infer that the defendant had agreed to commit the offense based solely on evidence that they discredited for another purpose.