The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Natalie QUEZADA, Defendant-Appellee.

No. 86SA293.

Supreme Court of Colorado,
En Banc.

Jan. 26, 1987.

David J. Thomas, Dist. Atty., E. Ronald Beeks, Deputy Dist. Atty., Golden, for plaintiff-appellant.

James T. Steiert, Arvada, for defendant-appellee.

QUINN, Chief Justice.

In this interlocutory appeal, the People challenge an order suppressing a custodial statement by the defendant, Natalie Quezada, on the basis that the police did not "scrupulously honor" her right to cut off questioning after she had been advised of her *Miranda*[1] rights and had invoked her right to remain silent. We reverse the order of suppression.

## I.

On April 18, 1986, at about 12:15 p.m., a theft occurred at a jewelry store in Arvada, Colorado. The defendant and her boyfriend, David Baros, were identified as suspects. Shortly after 1:00 p.m. Arvada police officer Steven Purol went to their residence, was admitted by Baros's mother, placed the defendant under arrest, and advised her of her *Miranda* rights. The officer testified that the defendant told him that she understood her rights and did not want to talk about the incident, but she made no request to confer with an attorney. Officer Purol made no attempt to question the defendant thereafter.

The officer took the defendant to the Arvada police station. During the booking process it was discovered that there was an outstanding arrest warrant for the defendant's failure to appear on a municipal ordinance violation for shoplifting. Officer Purol took the defendant to the Arvada municipal court, which was in the same building. After the defendant pled guilty to the shoplifting charge, the officer returned her to the booking area of the police station.

Detective Vonderohe testified at the suppression hearing that he contacted the defendant at approximately 1:40 p.m. and asked her if she would be willing to talk to him. Detective Vonderohe was unaware

that Officer Purol had previously advised the defendant of her *Miranda* rights and that she had declined to discuss the case. According to the detective, the defendant agreed to talk to him and was taken upstairs to the interview room. The record discloses that at approximately 2:10 p.m. the detective advised the defendant orally and in writing of her rights as follows:

> You have the right to remain silent. Anything you say can and will be used against you in a court of law.
>
> You have the right to speak with an attorney and to have him present during questioning.
>
> If you cannot afford an attorney, the court will appoint one for you free of charge.
>
> You have the right to stop this interview at any time.

The defendant told the detective that she understood her rights and that she would discuss the theft with the detective. She then signed a written waiver of rights which stated: "I understand my rights as they have been explained to me. With these rights in mind, I am willing to answer questions at this time." She told the detective that she knew Baros was intending to steal jewelry when they entered the jewelry store and that her role was to distract the jeweler while Baros committed the theft.

The defendant also testified at the suppression hearing, but gave a different account of the events. She stated that Detective Vonderohe had initially asked her if she had anything to say and that she told him that she and Baros had gone to the jewelry store to get her watch fixed. The detective later approached her while she was in a holding cell and, according to the defendant, "told me if I didn't say what David already said, I'd be in bigger trouble, and that's when I got scared." She testified that she agreed to talk to the detective because she was upset about being pregnant, was concerned about her two-and-one-half year old daughter, and thought

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

that if she made a statement she would be permitted to leave. It was her further testimony that she neither paid attention to nor understood her rights, that she felt intimidated and was crying during the interview, and that she had told Detective Vonderohe what she believed he wanted to hear so she could go home to her child.

The district court granted the defendant's motion to suppress her statement to Detective Vonderohe. The court expressly rejected as "incredible" the defendant's testimony about not understanding her *Miranda* rights and about being coerced or intimidated into making the statement. The court also found that the testimony of Officer Purol and Detective Vonderohe was "totally credible," and that when the detective interviewed the defendant he was unaware of her prior refusal to discuss the theft with Officer Purol. After concluding that the defendant's written waiver of her *Miranda* rights was knowing, intelligent and voluntary, the court, relying on *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), ruled as follows:

> The issue to me is not whether there was a knowing and intelligent waiver and is not whether the right to an attorney was invoked, the issue is whether the right exercised by this defendant to remain silent regarding this matter was or was not scrupulously honored. The fact that the detective didn't know that she had exercised that right is not the point....
> I am going to grant the motion to suppress ... because, when the [Mosley] Court speaks of scrupulously respecting a right that a defendant exercises, it just seems to me that, even if innocently, the person is questioned ... on the same subject within an hour thereafter at the initiation of the police, I don't see how it can be said that the right which she exercised has been scrupulously honored.
>
> \* \* \* \* \* \*
>
> [W]hile I find that the violation of that right was not deliberate, not in bad faith, and that there was, in fact, a knowing and intelligent waiver, I find that initiating questioning under these circumstanc-

es does not constitute scrupulously honoring a right which was invoked some 45 minutes before, and for that reason the motion to suppress will be granted.

The People argue that the trial court misapplied the *Mosley* rule to the facts of this case. We conclude that the trial court erred in its interpretation of the *Mosley* case. The trial court interpreted *Mosley* as a virtual per se prohibition of Detective Vonderohe's interrogation simply because that interrogation occurred within one hour of the defendant's initial invocation of her right of silence upon her arrest. *Mosley*, in our view, requires a consideration of the total circumstances of the case with a view to ultimately determining whether a suspect's right to cut off questioning was "scrupulously honored." *Mosley* emphasizes several factors which, although not intended to be exhaustive, should inform a court's ultimate determination of the suppression issue. When the rule of *Mosley* is applied to this case, we cannot reconcile the trial court's ultimate constitutional ruling with its evidentiary findings of fact. We accordingly reverse the order of suppression.

## II.

In reaching a decision on a motion to suppress a custodial statement, a court must engage both in factfinding—a specific inquiry into the historical phenomena of the case—and law application, which involves the application of the controlling legal standard to the facts established by the evidence. *See* H. Monaghan, *Constitutional Fact Review*, 85 Colum.L.Rev. 229, 235–36 (1985). A court's findings of historical fact are entitled to deference by a reviewing court and will not be overturned if supported by competent evidence in the record. *See Maine v. Taylor*, 477 U.S. ——, ——, 106 S.Ct. 2440, 2451, 91 L.Ed.2d 110, 125 (1986); *People v. Raffaelli*, 647 P.2d 230, 236 (Colo.1982); *People v. Pineda*, 182 Colo. 385, 387, 513 P.2d 452, 453 (1973); *People v. Medina*, 180 Colo. 56, 58, 501 P.2d 1332 (1972). An ultimate conclusion of constitutional law that is inconsist-

ent with or unsupported by evidentiary findings, however, is subject to correction by a reviewing court, as is a court's application of an erroneous legal standard to the facts of the case. *People v. Pearson,* 725 P.2d 782 (Colo.1986); *People v. Chase,* 719 P.2d 718 (Colo.1986); *Huguley v. People,* 195 Colo. 259, 577 P.2d 746 (1978). With these preliminary observations aside, we turn to the controlling legal standard applicable to this case.

## III.

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court promulgated a set of safeguards to protect the constitutional rights of persons subjected to custodial police interrogation. After prescribing certain warnings which the police must give before questioning begins, the Court stated: "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." 384 U.S. at 444, 86 S.Ct. at 1612. *Miranda* left open the question of what circumstances, if any, must be present before a resumption of questioning is permissible.

That question was addressed by the Court some nine years later in *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). After noting that neither the above-quoted excerpt from *Miranda* nor any other passage from that opinion created "a *per se* proscription of indefinite duration upon any further questioning by the police officer on any subject, once the person in custody has indicated a desire to remain silent," the Court held that the admissibility of statements obtained after the suspect has invoked the right of silence depends on whether the suspect's "right to cut off questioning" was "scrupulously honored" by the police. *Id.* at 102–04, 96 S.Ct. at 325–27. In determining that Mosley's right to cut off questioning had been fully respected, the Court reviewed the totality of circumstances un-derlying Mosley's confession and attached significance to the following factors: (1) before his initial interrogation, Mosley was advised of his rights, acknowledged that he understood them, and signed a printed notification-of-rights form; (2) when Mosley invoked his right to remain silent, the officer conducting the first interview immediately stopped the interrogation and did not attempt to resume questioning or persuade Mosley to reconsider his decision; (3) the second interrogation, which took place more than two hours later, was conducted by a different police officer, at a different location, and concerned a different crime; and (4) at the outset of the second interrogation, Mosley was again given a full and complete *Miranda* advisement. *Id.* at 104, 96 S.Ct. at 326.

Some courts have interpreted *Mosley* to mean that in the absence of different crimes, or some similarly extraordinary factor, it is unlawful for the police to attempt to question a suspect who has previously asserted the right to remain silent. *E.g., United States v. Maddox,* 413 F.Supp. 60 (W.D.Okl.1976); *Matter of T.T.T.,* 365 A.2d 366 (D.C.1976); *Commonwealth v. Walker,* 470 Pa. 534, 368 A.2d 1284 (1977). Other courts have read *Mosley* to require a consideration of the particular circumstances under which the custodial statement was obtained, with emphasis on the following factors which the Court analyzed in *Mosley:* (1) whether the police immediately ceased the initial interrogation upon the defendant's request; (2) whether questioning was resumed only after the passage of a significant period of time; (3) whether a fresh set of *Miranda* warnings was given prior to the second interrogation; and (4) whether the second interrogation was restricted to a crime that had not been the subject of the first interrogation. *See, e.g., Jackson v. Wyrick,* 730 F.2d 1177 (8th Cir.), *cert. denied,* 469 U.S. 849, 105 S.Ct. 167, 83 L.Ed.2d 102 (1984); *United States v. Hernandez,* 574 F.2d 1362 (5th Cir.1978); *United States v. Finch,* 557 F.2d 1234 (8th Cir.), *cert. denied,* 434 U.S. 927, 98 S.Ct. 409, 54 L.Ed.2d 285 (1977). Under this approach, no one factor is conclusive. *See,*

*e.g., Finch,* 557 F.2d at 1236 (fact that subsequent interrogation involved the same crime as the initial interrogation was only one factor to consider; when all factors were taken into account, court was convinced that defendant's right to cut off questioning was scrupulously honored); *accord Jackson,* 730 F.2d at 1180; *Hernandez,* 574 F.2d at 1368 (fact that new warnings were given before reinterrogations was not sufficient to show police scrupulously honored suspect's right to cut off questioning).

■ We believe this case-by-case approach represents a correct interpretation of *Mosley.* The Supreme Court in *Mosley* declined to read *Miranda* either in a way that would have prohibited all subsequent efforts at interrogation once a suspect invoked the right to silence, or in a way that would have permitted a resumption of interrogation after only a momentary respite following a suspect's invocation of silence. Rather, the Court read *Miranda* to permit successive interrogations only under circumstances where the resumption of questioning is consistent with the scrupulous observance of the suspect's right to cut off questioning. Moreover, we do not believe the four factors discussed in *Mosley* are intended to be exhaustive of the inquiry, but rather are to be considered along with any other factor bearing on whether the police fully respected the suspect's right to cut off questioning. In our view, a case-by-case consideration of the four *Mosley* factors, along with any other significant factor disclosed by the evidence, accommodates law enforcement's interest in legitimate investigative activity and at the same time protects the suspect against the potentially coercive pressures stemming from successive efforts to obtain a statement notwithstanding the suspect's prior refusal to speak.[2]

## IV.

■ The trial court's ultimate constitutional decision that the defendant's right to cut off questioning was not scrupulously honored proceeded from the assumption that the *Mosley* decision created a categorical rule that rendered Detective Vonderohe's interrogation of the defendant unlawful, regardless of the peculiar circumstances surrounding that interrogation, simply because of the less than one-hour interval following the defendant's initial invocation of the right to remain silent upon her arrest. That the court indulged in this assumption is evident from the practically conclusive significance it attached to the forty-five minute interval between the defendant's refusal to make a statement to Officer Purol and Detective Vonderohe's interrogation of the defendant at the stationhouse. The trial court's interpretation of *Mosley* is incorrect. As previously discussed, *Mosley* requires a case-by-case consideration of the four factors deemed relevant in that case, and any other significant factor disclosed by the evidence, in order to determine whether a resumption of questioning of the defendant was consistent with the scrupulous observance of the defendant's right to cut off questioning at any time. A review of the record in light of the *Mosley* rule convinces us that the trial court's ultimate constitutional ruling cannot be squared with the court's evidentiary findings of fact.

In its ruling, the district court noted that the testimony of Officer Purol was "totally credible." The officer testified that he ad-

---

**2.** In contrast to *Mosley,* the Supreme Court held in *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981), that an accused who has invoked his right to counsel after being advised of his rights is not subject to further interrogation until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. The Court distinguished *Mosley,* noting the *Mosley* Court's recognition (423 U.S. at 104 n. 10, 96 S.Ct. at 326 n. 10) that *Miranda* had distinguished between the procedural safeguards triggered by a request to remain silent and a request for an attorney and had required that interrogation cease until an attorney was present only if the individual stated that he wanted counsel.

In the instant case, the record conclusively shows that the defendant at no time requested counsel, but invoked only her right to remain silent.

vised the defendant of her *Miranda* rights when he arrested her in her home, that she stated she understood her rights and did not wish to talk about the incident, and that he made no attempt to interrogate her thereafter. Thus, the record clearly shows that Officer Purol fully complied with the first *Mosley* factor by refraining from any interrogation whatever upon the defendant's invocation of her right to silence.

With respect to the second *Mosley* factor—whether questioning was resumed only after the passage of a significant period of time—the district court determined that the forty-five minute interval between the defendant's initial invocation of her right to silence upon her arrest by Officer Purol and the stationhouse interrogation by Detective Vonderohe was not of sufficient duration to establish that the defendant's right to cut off questioning had been scrupulously honored. In the course of its ruling, however, the district court noted that Detective Vonderohe's testimony was also "totally credible." The detective testified that he was unaware of the defendant's prior invocation of a right to silence, that he advised her of her *Miranda* rights prior to his interrogation at the stationhouse— thereby satisfying the third *Mosley* factor—and that the defendant told him that she understood her rights and desired to speak to him about the theft. Since the court expressly rejected the defendant's testimony as "incredible," there is nothing whatever in the record to suggest that during the interval between the defendant's initial invocation of her right of silence and the interrogation by Detective Vonderohe the defendant was somehow deprived of a full and fair opportunity to intelligently assess her own interests in either maintaining continued silence or making a statement. What the Supreme Court noted in *Mosley* is equally applicable here: "This is not a case ... where the police failed to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind." 423 U.S. at 105–06, 96 S.Ct. at 327.

■ We acknowledge that *Mosley's* requirement that the police "scrupulously honor" the suspect's assertion of the right to remain silent is independent of the requirement that any waiver of rights be knowing, intelligent, and voluntary. The point to be emphasized, however, is that there is nothing about the interval between the defendant's initial invocation of her right of silence and the subsequent interrogation by Detective Vonderohe to suggest in any way that the defendant's right to cut off questioning at any time would not have been as scrupulously honored by Detective Vonderohe as it was by Officer Purol. In light of the court's express finding that the testimony of Officer Purol and Detective Vonderohe was "totally credible," and that the defendant's testimony was "incredible," we can find no credible evidence in the record to support an inference that the defendant was somehow led to believe that any further assertion of her right to remain silent would be an exercise in futility. The trial court's evidentiary findings completely refute any such notion.

■ In relation to the fourth *Mosley* factor, the record is clear that Detective Vonderohe's interrogation related to the same crime which served as the basis for the defendant's initial invocation of her right to silence. We decline, however, to read *Mosley* as proscribing under all circumstances sequential interrogations concerning the same crime. To so interpret *Mosley* would be to ignore the Supreme Court's express recognition in that case that such a blanket prohibition would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity and deprive suspects of an opportunity to make informed and intelligent assessments of their interests. 423 U.S. at 102, 96 S.Ct. at 325. Rather, the fact that the subject of the second interrogation is the same as the first has significance only as it bears on the overriding question of whether the defendant's right to cut off questioning at any time was scrupulously honored. *E.g., Finch,* 557 F.2d at 1236; *Jackson,* 730 F.2d at 1180.

Again, after eliminating from consideration the defendant's testimony which the trial court rejected as incredible, we find nothing in the record to support the conclusion that Officer Vonderohe's questioning of the defendant was inconsistent with a scrupulous observance of the defendant's right to cut off questioning at any time. What the record shows is that Officer Vonderohe, who was unaware of the defendant's prior invocation of silence, questioned her only after she first indicated a willingness to speak, after he fully advised her of her *Miranda* rights, including her right to cut off questioning at any time, and after the defendant orally and in writing agreed to speak about the case.

There is no suggestion in the record that, other than the four factors deemed relevant in *Mosley*, there was any other circumstance underlying the defendant's interrogation that might possibly bear on whether the defendant's right to cut off questioning was fully respected in this case. In sum, the evidentiary state of the record, viewed in light of the *Mosley* decision, fails to provide adequate support for the court's ultimate constitutional ruling that the defendant's right to cut off questioning at any time was not scrupulously honored.

The order of suppression is reversed.

Dubofsky, J., does not participate.