**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**James C. CLOSE, Defendant–Appellant.**

**No. 91CA0947.**

Colorado Court of Appeals,
Div. V.

July 1, 1993.

Rehearing Denied Aug. 5, 1993.

Certiorari Denied Feb. 14, 1994.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Linda C. Michow, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Kathleen A. Lord, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge DAVIDSON.

Defendant, James C. Close, appeals from the judgments of conviction entered on jury verdicts finding him guilty of criminal mischief, first degree criminal trespass, theft, conspiracy to commit criminal mischief and theft, aggravated robbery, attempted aggravated robbery, second degree assault, ethnic

intimidation, and conspiracy to commit assault and ethnic intimidation. We affirm, but remand for resentencing.

Around midnight on October 6, 1990, defendant and three companions drove to a park near Teikyo Loretto Heights University in Denver. They vandalized and stole speakers from a car parked nearby, then wandered through the park armed with baseball bats and sticks. Upon finding a group of six Japanese students, defendant and his friends surrounded the group, ordered them to lie down, demanded identification and personal items, and beat them with the bats and sticks. The attack continued until the victims were able to escape.

## I.

### A.

Defendant first contends that the trial court erred in denying his motion to suppress custodial statements on the grounds that the police did not "scrupulously honor" his right to cut off questioning after he had been advised of his *Miranda* rights and had invoked his right to remain silent. We disagree.

The pertinent undisputed facts are as follows. The police first contacted defendant at the Douglas County jail where he was being detained for an unrelated traffic offense. He was taken to an interview room and advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant told the police he did not want to discuss his case, signed "Nope" on the *Miranda* advisement form, and the interview terminated. The police then arranged to transport the defendant to the Denver county jail.

It took approximately 45 minutes to transfer the defendant from the Douglas county jail to Denver, during which time the defendant talked casually with the police about other matters. At the police station, defendant "had been very conversational" so the police asked him again if he wanted to discuss the case. He said, "Yes," and was then readvised of his *Miranda* rights. Approximately one hour and forty minutes had elapsed since the first advisement. The de-fendant said he understood his rights, signed the form, and made an oral and a written statement. After a third advisement, he also made a videotaped statement.

The trial court denied defendant's motion to suppress, concluding that the statements were "voluntary" under "the totality of the circumstances."

■ Defendant contends, and the People concede, that the trial court used the wrong legal standard to determine whether the defendant's statements should have been suppressed. "[T]he admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313, 321 (1975); *People v. Quezada*, 731 P.2d 730 (Colo.1987). Thus, we agree that the trial court here used an incorrect standard in ruling on the suppression motion.

Defendant asserts that application of the correct legal standard requires that we determine as a matter of law that the police did not scrupulously honor defendant's request to cut off questioning. In the alternative, citing *People v. McKinstrey*, 852 P.2d 467 (Colo.1993), he suggests that we should remand the issue to the trial court to reconsider its ruling under the correct standard.

■ However, applying the correct legal standard to the trial court's adequately supported findings of fact, the record will support no result other than that the questioning of defendant was consistent with a scrupulous observance of his right to cut off questioning at any time and, therefore, we affirm the trial court's ruling. *See People v. Hutton*, 831 P.2d 486 (Colo.1992).

■ In determining whether a defendant's right to cut off questioning has been scrupulously honored by the police, consideration of the following factors on a case by case basis is appropriate: (1) whether the police immediately ceased the initial interrogation upon the defendant's request; (2) whether questioning was resumed only after the passage of a significant period of time; (3) whether a

fresh set of *Miranda* warnings was given prior to the second interrogation; and (4) whether the subject of the second interrogation differed from that of the first interrogation. No one factor is conclusive nor are the factors exhaustive. *People v. Quezada, supra.*

Here, defendant concedes that the interviewing officers ended the initial interview immediately upon his request and that a fresh set of *Miranda* warnings preceded the second interrogation. Moreover, in the context of finding that defendant's statements were voluntary, the trial court stated that it had considered:

> the totality of the circumstances, [that is], the atmosphere, the events, the defendant's conduct before, during the statement, the defendant's mental condition, any events or occurrences surrounding the statement.

Specifically noting the lengthy experience of the officers, the trial court indicated that they had taken care not to put the evidence into jeopardy by a "violation of defendant's procedural and substantive rights." From this finding and the tenor of the entire ruling, we infer that the trial court found nothing improper in the officers' conduct during the time surrounding defendant's statements.

We reject defendant's contention that a failure to honor his refusal to discuss the case was conclusively demonstrated by virtue of the second interrogation occurring less than two hours after and by the same officers on the same subject as the initial questioning. *See People v. Quezada, supra* (second interrogation concerning same crime proper even though only 45 minutes had passed).

Nothing in the record supports the conclusion that the questioning was inconsistent with a scrupulous observance of the defendant's right to cut off questioning at any time. *See People v. Quezada, supra.*

### B.

Additionally, defendant contends that the trial court erred in denying his motion to suppress his statements because they were given after the police "erroneously implied that he was likely to receive a light sentence." We do not agree.

Defendant's contention is based on a videotaped conversation which occurred while one officer had left the room for an advisement form. Although portions of the pertinent conversation are not clear because more than one person was talking at the same time, the following is a transcription of the colloquy as understood by defendant:

> Defendant: This is cool. (Laughs) This doesn't bother me too much.
>
> Officer: No, this is the way to handle it.
>
> Defendant: What's the most, what's the most they ever gave somebody for this kind of a charge?
>
> Officer: I really don't know. We'll have to, uh. You know every [set of] circumstances is unique and you've got a clean record, certainly ...

Their conversation was interrupted at this point.

The trial court, after viewing the videotape, found that the response to defendant's inquiry was "particularly neutral," that "[e]ssentially they pass the buck and say that other people, particularly the courts and the jury, will take care of that part, and it depends on what happens at points beyond their involvement in the investigation of the case."

Defendant contends that the trial court's remarks were made in the context of its finding of voluntariness, did not specifically reference the "clean record" comment, and might have been based, in part, on an "incorrect" transcription by the police that indicated that the conversation trailed off just prior to the crucial comment. For purposes of addressing this contention, we assume, as defendant urges, that the officer made this reference to defendant's unblemished record and that the trial court somehow was unaware of it, despite having viewed the videotape. Nonetheless, we conclude, as a matter of law, that the officer's comment did not constitute an implied promise of leniency.

When asked by defendant what sentence might be imposed, the officer's first statement was, "I really don't know." His further

comment that "you've got a clean record" was interrupted. It is purely speculative what the officer intended to say after that. Nothing in the conversation indicates an implicit promise to do anything for defendant in exchange for his statement. Importantly, defendant had already given an oral and a written statement. As observed by the trial court, the case against defendant appeared strong at that time, there was no need to make "some compromise with the defendant," nor were these experienced officers likely to make any type of deal in this case without conferring with the prosecutor.

## II.

In a pretrial motion, the prosecutor sought to have admitted pursuant to CRE 404(b) evidence of an incident one week earlier in which defendant and some of the same companions had attacked two Japanese students and demanded personal belongings from them. After a hearing on the matter, the trial court found by a preponderance of the evidence that defendant had committed this other crime, see *People v. Garner*, 806 P.2d 366 (Colo.1991), and permitted this other crime evidence to prove elements of defendant's intent, common plan or scheme, and identity regarding the crime charged. Defendant contends that the trial court impermissibly admitted this evidence. We disagree.

CRE 404(b) prohibits admission of evidence of another crime to prove the character of the accused and that he acted in conformity therewith. Even so, such evidence may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

■ To be admissible for the limited purposes enumerated in CRE 404(b), it is necessary that: (1) the evidence relates to a material fact; (2) the evidence is logically relevant, tending to make the existence of the material fact more or less probable than it would be without the evidence; (3) its logical relevance is independent of the prohibited inference that defendant has a bad character; and (4) its probative value substantially outweighs the danger of unfair prejudice. *Peo-*

*ple v. Spoto*, 795 P.2d 1314 (Colo.1990). The proponent of the proffered evidence must establish each of these factors by a preponderance of the evidence. *People v. Garner, supra.*

■ The general scheme exception "applies when the evidence shows a larger continuing plan to engage in certain criminal activity," and proof of a common plan can be used to establish intent or identity. *See People v. Ray*, 626 P.2d 167, 171 (Colo.1981); J. Strong, *McCormick on Evidence* § 190 (1992); *see generally* E. Imwinkelried, *Uncharged Misconduct Evidence* (1984).

■ In order for two or more acts to constitute a scheme, they must have a nexus with each other from which a continuous scheme or common design can be discerned. Factors to be considered include similarity between the offenses and the closeness in time of their commission. *People v. Honey*, 198 Colo. 64, 596 P.2d 751 (1979).

■ Here, the proffered evidence revealed the following similarities between the prior incident and the crime charged: both involved assaults against Japanese students resulting in bodily injury; the incidents occurred within a week of each other; both were near the Teikyo Loretto Heights University which has a predominantly Japanese student population; ethnic derogatory remarks toward the victims were made in both instances; the attacks were late at night against small groups of unarmed victims in an "ambush-style" manner; the victims were robbed or an attempt was made to do so; and in both incidents defendant was with some of the same co-participants.

We conclude that the temporal and geographic closeness and the similarity of the two incidents indicate a general scheme of activity, *see People v. Honey, supra*, and can be used to establish elements of intent to commit, or identity of defendant as perpetrator of, the charged crimes. *See People v. Ray, supra.*

Specifically, the facts that defendant was familiar with the area around the University, frequented that vicinity late at night with his friends, knew that Japanese students were

likely to be associating in small groups nearby, and committed prior criminal acts against Japanese victims are logically related to the issues of defendant's identity as perpetrator, his intent to intimidate because of the victims' ethnicity, and his intent to threaten, rob, or cause bodily injury to the victims. Contrary to defendant's contention, such evidence of defendant's knowledge and practices is quite separable from inferences by the jury as to traits of his character.

To the extent defendant argues that the jury was likely to use the evidence impermissibly to infer that defendant was a person of bad character and, thus, to convict him on that basis, we note that it was specifically instructed to the contrary. Hence, we assume that it followed the court's instructions and used the evidence only for proper purposes. *Schmutz v. Bolles,* 800 P.2d 1307 (Colo.1990).

As to the requirement that the probative value of the evidence of the other crime outweigh its prejudice, substantial discretion is left to the trial court, and we find no abuse of that discretion here. *People v. Czemerynski,* 786 P.2d 1100 (Colo.1990); *People v. Crespin,* 631 P.2d 1144 (Colo.App.1981). We conclude, therefore, that the trial court did not err by admitting the other crime evidence.

### III.

Defendant further contends that the trial court improperly instructed the jury on complicitor liability. We disagree.

■ The relevant instruction, patterned after *COLJI–Crim.* No. 6:04 (1983), states:

A person is guilty of an offense committed by another person if he is a complicitor. To be guilty as a complicitor, the following must be established beyond a reasonable doubt:

1. A crime must have been committed

2. Another person must have committed all or part of the crime

3. *The defendant must have had knowledge that the other person intended to commit all or part of the crime*

4. The defendant did intentionally aid, abet, advise, or encourage the other person in the commission or planning of the crime. (emphasis added)

Section 18–1–603, C.R.S. (1986 Repl.Vol. 8B) provides:

A person is legally accountable as principal for the behavior of another constituting a criminal offense if, *with the intent to promote or facilitate the commission of the offense,* he aids, abets, or advises the other person in planning or committing the offense. (emphasis added)

### A.

Defendant argues that the requirement under the instruction that defendant must have "knowledge that the other person intended to commit [the] crime" is not equivalent to the statutory requirement that defendant must have "the intent to promote or facilitate a particular crime." We disagree.

The supreme court, in *People v. Wheeler,* 772 P.2d 101, 103 (Colo.1989), stated the following requirements for finding a defendant guilty under the theory of complicity:

To support responsibility under the complicity statute it is only necessary to prove that (1) the principal committed the crime, (2) *knowledge by the complicitor that the principal intended to commit the crime,* and (3) the complicitor having the requisite knowledge, did aid, abet or encourage the principal in the commission of the crime. (emphasis added)

Initially, we note that the challenged language in the instruction given by the trial court, in addition to modeling *COLJI–Crim.* No. 6:04 (1983), is substantively identical to the second requirement set forth in *Wheeler,* emphasized above.

Moreover, the *Wheeler* court observed that complicity is not a substantive offense, but rather is merely a theory of law by which a defendant becomes accountable for a criminal offense committed by another. Thus, the 'intent' referred to in the complicity statute retains its common meaning and is not defined according to § 18–1–501(5), C.R.S. (1986 Repl.Vol. 8B). The supreme court explicitly held that the " 'intent to promote or

facilitate the commission of the offense' " of which the complicity statute speaks "only requires knowledge by the complicitor that the principal is engaging in, or about to engage in, criminal conduct" and requires "the intent [of the complicitor] to aid the principal in the criminal act or conduct." *People v. Wheeler, supra*, at 103–104.

Because the instruction given by the trial court comports with the language of the statute as interpreted in *Wheeler*, we perceive no error in this regard.

### B.

Defendant also contends that this instruction was ambiguous. Specifically, he argues that by the use of the indefinite articles "a" and "an" in the instruction, the jury could find defendant to be guilty as a complicitor of some crime different from the underlying crime committed by the other person. We disagree.

In order to find defendant guilty of a crime as a complicitor, the instruction requires the jury, as a threshold step, to find that "a crime" was committed; that is, that all elements of a charged substantive offense have been proven beyond a reasonable doubt. *See People v. R.V.*, 635 P.2d 892 (Colo.1981).

Thereafter, all references in the instruction are to "the crime." This grammatical switch to the definite article "the" clearly refers the jury back to the same offense which it established had been committed in step one.

■ Thus, contrary to defendant's argument, if the jury finds that aggravated robbery has been committed, every later reference in the instruction to "the crime" is to that same underlying offense of aggravated robbery—not to some different crime. Hence, in order to find defendant guilty of aggravated robbery as a complicitor, the jury would have to find that another person committed all or part of the aggravated robbery, that the defendant had knowledge that the other person intended to commit all or part of the aggravated robbery, and that defendant intended to aid, abet, advise, or encourage the other person in the commission or planning of the aggravated robbery.

### C.

Defendant also challenges the use of the phrase "all or part of the crime" in the instruction. He focuses on the third requirement of the instruction which states:

The defendant must have had knowledge that the other person intended to commit all or part of the crime.

Defendant argues that, as instructed, the jury could have found him guilty of a crime, as a complicitor, when he knew only that the other person intended to commit some portion of the crime. By way of example, he argues that it was possible for the jury to find him guilty of aggravated robbery if he knew only that the other person intended to place the victim in reasonable fear of bodily injury by the use of force with a deadly weapon, which is part of the crime, but not that the other person intended to rob the victim. As we understand it, his contention regarding the instruction is twofold—one, that it might allow defendant to be convicted of a crime more severe than of what he was aware, and two, that it does not require that the other person specifically intend to accomplish the entire crime committed. We disagree that the instruction is erroneous.

■ We observe initially that, under the complicity theory, although all the elements of the underlying crime must have been committed, it is not necessary that any single person have done so. It is necessary only that the acts of the complicitor and other actors, together, constitute all acts necessary to complete the offense. *People v. Mershon*, 844 P.2d 1240 (Colo.App.1992). Thus, if only two persons committed the crime—defendant and another—then defendant must have committed whatever elements of the crime were not committed by that other person.

This concept is reflected in the instruction which first requires the jury to find that a crime has been committed, then to find that a person other than defendant has committed some part or element of that crime.

■ For defendant to be accountable for those actions of the other person, defendant must intend to aid in committing or planning "the crime." Thus, insofar as defendant is

arguing that he might be convicted of a crime more severe than of what defendant was aware, the instruction, by its plain language, does not permit such a result.

■ Defendant must also know that the other person "intended to commit all or part of the crime." This language requires only that defendant know that the other person "is engaging [in] criminal conduct." *People v. Wheeler, supra,* at 104. That is, defendant must know only that any acts committed by the other person—whether they constitute all or part of the crime—are criminal in nature. Thus, defendant·errs by construing the complicitor statute as requiring that the other person must specifically intend to accomplish the entire crime. *See People v. Wheeler, supra.*

We return to defendant's example in which the jury finds that all elements of aggravated robbery have been committed and that some person other than defendant has committed some essential element. As long as the jury also determines that defendant intended to assist in the commission of aggravated robbery and knew that whatever acts committed by the other person were criminal in nature, defendant is accountable for the other's acts and may be convicted of aggravated robbery.

We note, finally, that this "all or part" language is directly from the pattern jury instruction for complicity, *COLJI–Crim.* No. 6:04 (1983), and has been used with approval by this court. *People v. Arrington,* 843 P.2d 62 (Colo.App.1992).

## IV.

We disagree with defendant that the jury's verdict of guilty of aggravated robbery and attempted aggravated robbery under a complicity theory and not guilty of conspiracy to commit aggravated robbery are inconsistent.

■ Defendant is correct that inconsistent jury verdicts based upon the same evidence cannot stand. *People v. Hoffman,* 655 P.2d 393 (Colo.1982). However, a jury verdict will not be reversed for inconsistency if the "crimes charged required different elements of proof, and the jury could [find] from the very same evidence that the element of one crime was present while at the same

time finding that the element of another crime charged was absent." *People v. Strachan,* 775 P.2d 37, 39 (Colo.1989).

■ Here, comparing the elements of the crimes, we observe that conspiracy, unlike the theory of complicity, requires an agreement to commit the planned crime. The record reveals that there was no evidence of any agreement between defendant and any of the others to commit aggravated robbery. However, the evidence supports the finding by the jury that defendant committed or attempted to commit the aggravated robberies or aided, abetted, or encouraged the commission of the aggravated robberies. Thus, the verdicts are not inconsistent, and we find no error.

## V.

Defendant contends that the trial court's failure to instruct the jury *sua sponte* on the affirmative defense of intoxication constitutes reversible plain error. We do not agree.

Voluntary intoxication is relevant "to negative the existence of specific intent if such intent is an element of the crime charged." Section 18–1–804(1), C.R.S. (1986 Repl.Vol. 8B); *see People v. Barnhart,* 638 P.2d 814 (Colo.App.1981).

■ Because defendant made no objection at trial, the applicable standard of review is plain error. Crim.P. 52(b). The appropriate standard for plain error review is whether an appellate court, after reviewing the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Wilson v. People,* 743 P.2d 415 (Colo.1987). Under the circumstances here, we conclude there was no plain error.

Here, the record reveals defendant's strategy at trial to be that, although he "admitted the criminal mischief" and may have "joined in the beating" and "engaged in a pattern of intimidation," he did not rob the victims nor try to kill them. And, while there was some evidence that defendant and his friends had been drinking prior to the attack on the Japanese students, counsel made only pass-

ing reference to that fact in opening statement and closing argument.

We thus agree with the People's characterization of the failure to tender an instruction on intoxication as a tactical decision, with the defendant choosing to persuade the jury that he did not commit robbery or attempted murder at all, rather than that he committed the crimes but was too intoxicated to know what he was doing. We, therefore, conclude that the trial court's action did not constitute error, much less plain error.

## VI.

■ Defendant was convicted, *inter alia,* of three counts of attempted aggravated robbery. However, he was not charged separately with any count of crime of violence. The trial court determined that it was required to impose consecutive aggravated sentences for the attempted aggravated robbery convictions pursuant to § 16–11–309, C.R.S. (1986 Repl.Vol. 8A). Defendant contends that this was error, and we agree.

As pertinent here, § 16–11–309, C.R.S. (1986 Repl.Vol. 8A) provides:

(4) In any case in which the accused is charged with a crime of violence as defined in subsection (2)(a)(I) of this section, the indictment or information shall so allege in a separate count, even though the use or threatened use of such deadly weapon or infliction of such serious bodily injury or death is not an essential element of the crime charged.

(5) The jury, or the court if no jury trial is had, in any case as provided in subsection (4) of this section shall make a specific finding as to whether the accused did or did not use, or possessed and threatened to use, a deadly weapon during the commission of such crime or whether such serious bodily injury or death was caused by the accused. If the jury or court finds that the accused used, or possessed and threatened the use of, such deadly weapon or that such injury or death was caused by the accused, the penalty provisions of this section shall be applicable.

Clearly, attempted aggravated robbery is a crime of violence. *See People v. Chavez,* 730

P.2d 321 (Colo.1986); § 16–11–309(2)(a)(I), C.R.S. (1986 Repl.Vol. 8A). However, the statute requires that when a defendant is charged with a crime of violence as defined in § 16–11–309(2)(a)(I), "the indictment or information shall so allege in a separate count...." Section 16–11–309(4), C.R.S. (1986 Repl.Vol. 8A).

The People argue that crimes of violence are statutorily required to have aggravated range sentences, regardless of whether they are separately pleaded or proved. Citing *People v. Terry,* 791 P.2d 374 (Colo.1990), they contend that because aggravated robbery, as defined in § 18–4–302(4), C.R.S. (1986 Repl.Vol. 8A), specifically requires mandatory sentencing even without having been separately charged as required by § 16–11–309(4), the same analysis is required here. We do not agree.

In *People v. Terry, supra,* our supreme court determined that if an express statutory provision requires crimes of violence sentencing, a separate crime of violence count otherwise mandated by § 16–11–309(4) is not required. However, this statute still requires that "a prosecutor plead and prove a violent crimes count against a defendant whenever the substantive criminal statute does not specifically require sentencing under the violent crimes statute." *People v. Terry, supra,* at 378 (fn. 5).

Here, as pertinent to this issue, defendant was charged and convicted of attempted aggravated robbery pursuant to § 18–2–101, C.R.S. (1986 Repl.Vol. 8B). Attempt is a substantive offense, and by its terms, § 18–2–101 does not require crimes of violence sentencing. Therefore, the trial court's determination that an aggravated consecutive sentence was required for the three counts of attempted aggravated robbery was error. Hence, those sentences must be vacated, and the cause must be remanded for the trial court to impose new sentences, either concurrent or consecutive, as it determines is appropriate in the exercise of its discretion.

## VII.

In light of our affirmance on all issues except sentencing, we reject defendant's final

contention that the cumulative effect of error deprived him of a fair trial.

The judgments of conviction are affirmed. The sentences on the three counts of attempted aggravated robbery are vacated, and the cause is remanded to the trial court for imposition of new sentences as to these counts.

HUME and TAUBMAN, JJ., concur.