**The PEOPLE of the State of Colorado,
Plaintiff–Appellant,**

v.

**Laurie WHEELER, Defendant–Appellee.**

**No. 87SA379.**

Supreme Court of Colorado,
En Banc.

April 17, 1989.

Barney Iuppa, Dist. Atty., Robert M. Brown, Chief Deputy Dist. Atty., Karla J. Hansen, Jonathan A. Toof, Deputy Dist. Attys., Colorado Springs, for plaintiff-appellant.

Donna Dell'Olio, Cornish & Dell'Olio, Edward T. Farry, Colorado Springs, for defendant-appellee.

ROVIRA, Justice.

The defendant, Laurie Wheeler, was convicted of criminally negligent homicide as the result of a jury trial. The trial court granted her motion for judgment of acquittal, holding that criminally negligent homicide by a complicitor is not a cognizable crime. On appeal, the People argue that the trial court's ruling was based on a misunderstanding of the complicity theory of accountability. We agree with the People's position and hold that the trial court erred in entering the judgment of acquittal.

I.

The facts necessary for an understanding of the issue in this case are not in dispute. Wheeler and her co-defendant,

her common-law husband, Mitchell Anderson, lived in a triplex in Colorado Springs. Timothy Bothun, the victim, lived in another apartment in the same triplex. On the evening of September 23, 1986, Wheeler and Anderson left their apartment at about 7:30 p.m., leaving their three children in the care of Michelle Knight. During the evening Bothun and Knight talked about Wheeler. This discussion resulted in Bothun becoming angry at Wheeler.

When Wheeler and Anderson returned home, Anderson drove Knight home. During Anderson's absence, Wheeler and Bothun struck each other during the course of an argument. When Anderson returned, a fight began between him and Bothun. This fight was eventually broken up. Wheeler and Anderson entered their apartment while Bothun and a friend, Matthew Martin, who witnessed the evening's events, returned to Bothun's apartment.

A short time later, Anderson entered Bothun's apartment with a knife in his hand saying, "You hit my old lady. I'll kill you you son of a bitch." Wheeler followed Anderson into Bothun's apartment. Another fight started between Anderson and Bothun. When Anderson was on the floor with Bothun on top of him, Wheeler jumped on Bothun's back and pulled his head back by his hair. Martin, who had been present during the altercation, saw that Anderson's knife had been plunged into Bothun's side. After the knife had been withdrawn, Martin took the knife away from Anderson. Wheeler and Anderson returned to their apartment, and the police were called. Bothun died from the stab wound.

At trial, Martin testified that, while Wheeler was not trying to help Anderson stab Bothun, "she wasn't trying to prevent

it either." He also testified that the stabbing happened so quickly that it could not have been prevented by a bystander.

Wheeler and Anderson were charged with first degree murder and a crime of violence. Wheeler's trial was severed from Anderson's at her request. Before trial, the People reduced the charge to second degree murder and a crime of violence.

When the case was submitted to the jury, the trial court instructed the jury, over Wheeler's objection, on the lesser included offenses of manslaughter and criminally negligent homicide, and a complicity instruction was also given.[1]

After the jury returned a verdict of guilty to the offense of criminally negligent homicide, Wheeler moved for judgment of acquittal on the ground that it is a logical and legal impossibility to commit the crime of criminally negligent homicide by complicity.

In its order granting the motion, the trial court first noted that the prosecution relied on a complicity theory in prosecuting Wheeler, and she was found guilty of criminally negligent homicide under such a theory. The court also noted that Wheeler was acquitted of second degree murder and manslaughter.

After setting out the essential elements necessary to show complicity, the court stated:

> The important requirement as it relates to this case is that the complicitor must have had knowledge that the principal intended to commit the crime. Criminally negligent homicide is an unintentional killing caused by the actor's failure to perceive a substantial and unjustifiable risk that a certain result will occur.... A finding that a defendant intended to

---

1. Jury Instruction No. 14 reads as follows:
    A person is guilty of an offense committed by another person if she is a complicitor. To be guilty as a complicitor, the following must be established beyond a reasonable doubt:
    1. A crime must have been committed
    2. Mitchell Anderson must have committed all or part of the crime
    3. The Defendant, Laurie Wheeler, must have had knowledge that Mitchell Anderson intended to commit all or part of the crime

    4. The Defendant, Laurie Wheeler, with the intent to promote or facilitate the commission of the offense
    5. Aided, abetted, or advised the other person in planning or committing the offense. The adequacy of this instruction is not before us, and accordingly, we offer no opinion concerning it.

perpetrate an unintentional killing or a finding that one had knowledge that another intended to perpetrate an unintentional killing is a logical impossibility. The trial court concluded by holding that because there can be no crime of criminally negligent homicide by a complicitor, and given the fact that Wheeler was acquitted of second degree murder and manslaughter, she has been acquitted.[2]

## II.

### A.

Before reaching the detailed analysis on which we base our decision, it will be helpful to set forth some general rules about the theory of accountability known as complicity. Section 18–1–603, 8B C.R.S. (1986), describes when a person is legally accountable as a principal for the behavior of another on the theory of complicity. Section 18–1–603 provides: "A person is legally accountable as a principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he aids, abets, or advises the other person in planning or committing the offense."

■ Complicity is not a separate and distinct crime or offense; it is merely a theory of law by which a defendant becomes accountable for a criminal offense committed by another. *People v. Thompson*, 655 P.2d 416, 418 (Colo.1982); *People v. R.V.*, 635 P.2d 892, 894 (Colo.1981). Because complicity is not a substantive offense, the "intent" referred to in the complicity statute is not defined according to section 18–1–501(5), 8B C.R.S. (1986), which defines "intentionally" and "with intent" as those terms are used in the "offenses" set forth in the criminal code. *R.V.*, 635 P.2d at 894. Instead, the words "with intent to promote or facilitate" retain their common meaning. *See R.V.*, 635 P.2d at 894.

In *People v. Thompson*, 655 P.2d 416 (Colo.1982), this court set forth the requirements for finding a defendant guilty under the theory of complicity:

To support responsibility under the complicity statute it is only necessary to prove that (1) the principal committed the crime, (2) knowledge by the complicitor that the principal intended to commit the crime, and (3) the complicitor having the requisite knowledge, did aid, abet or encourage the principal in the commission of the crime.

*Id.* at 418. The issue in this case focuses on the second requirement in *Thompson*, "knowledge by the complicitor that the principal intended to commit the crime." Therefore, our concern here is reconciling the requirement that the complicitor "inten[d] to promote or facilitate the commission of the offense" with the definition of criminally negligent homicide.

### B.

Criminally negligent homicide is defined in section 18–3–105, 8B C.R.S. (1986), as follows: "Any person who causes the death of another person by conduct amounting to criminal negligence commits criminally negligent homicide which is a class 5 felony."

■ Wheeler argues that the *mens rea* for complicity is the "intent to promote or facilitate the commission of the offense," which requires "knowledge by the complicitor that the principal intended to commit the crime." *See* § 18–1–603, 8B C.R.S. (1986); *Thompson*, 655 P.2d at 418. According to Wheeler, this intent to promote the offense precludes a finding of complicity liability for a criminally negligent death. A careful analysis of the requirements for complicity and the elements of criminally negligent homicide demonstrates that Wheeler's argument is misconceived.

The "intent to promote or facilitate the commission of the offense" of which the complicity statute speaks is the intent to promote or facilitate the act or conduct of the principal. *Cf. People v. Thomas*, 729 P.2d 972, 974 (Colo.1986). This language does not require that the complicitor intend for the principal to cause death. *Cf. Thom-*

---

**2.** Subsequent to the court's order, Mitchell Anderson entered a plea of guilty to second degree murder and received a sentence of twenty-four years.

*as,* 729 P.2d at 974. The complicitor also need not intend for the principal to act in a criminally negligent manner. *Cf. Thomas,* 729 P.2d at 974. This language only requires knowledge by the complicitor that the principal is engaging in, or about to engage in, criminal conduct. Thus, the jury could find Wheeler guilty of criminally negligent homicide on a theory of complicity if it believed that she knew Anderson, the principal, was about to engage in conduct that was a gross deviation from the standard of care that a reasonable person would exercise.

This conclusion is supported by the reasoning of *Thomas.* In that case, we concluded that "there is no logical or legal inconsistency involved in the recognition of attempted reckless manslaughter as a crime under the Colorado Criminal Code." *Id.* at 975; *see also People v. Castro,* 657 P.2d 932 (Colo.1983) (attempted extreme indifference murder is a cognizable crime under the Colorado Criminal Code).

In recognizing the crime of attempted reckless manslaughter, the *Thomas* court concluded that:

> Attempted reckless manslaughter requires that the accused have the intent to commit the underlying offense of reckless manslaughter. The "intent to commit the underlying offense" ... is the intent to engage in and complete the risk-producing act or conduct. It does not include an intent that death occur even though the underlying crime, reckless manslaughter, has death as an essential element.

*Thomas,* 729 P.2d at 974 (footnote omitted). Likewise, in this case, the "intent to promote or facilitate the commission of the offense" of which the complicity statute speaks is the intent to aid the principal in the criminal act or conduct. It does not

include an intent that death occur even though the underlying crime, criminally negligent homicide, has death as an essential element.[3]

Wheeler argues that the analysis used in *Thomas* does not apply because the crime involved in that case was attempted reckless manslaughter. According to Wheeler, the attempt statute requires that the defendant "act[] with the kind of culpability otherwise required for commission of an offense," § 18–2–101(1), 8B C.R.S. (1986), while the complicity statute requires that the complicitor act "with the intent to promote or facilitate the commission of the offense," § 18–1–603, 8B C.R.S. (1986).

In *Thomas,* however, this court did not base its decision on the language "act[] with the kind of culpability otherwise required for the commission of the offense" in the attempt statute. Instead, this court relied on the language of *People v. Frysig,* 628 P.2d 1004 (Colo.1981), which held that the "intent to commit the underlying offense is an essential element of criminal attempt." *Id.* at 1010.

The language that the *Thomas* court relied on, namely, the "intent to commit the underlying offense," is similar to the language of the complicity statute which provides that the complicitor must act with the "intent to promote or facilitate the commission of the offense." The logic of the analysis in *Thomas* is the same whether the court is confronted with the attempt requirement from *Frysig* or the complicity requirement from the statute. Therefore, we believe the reasoning underlying the *Thomas* decision is equally applicable in this case.

## C.

The trial court ruled that a verdict of guilty of criminally negligent homicide on a

---

**3.** In *Thomas,* 729 P.2d at 974 n. 1, we pointed out that for some crimes, the intent to perform the "conduct" element of the crime will satisfy all the elements of the underlying offense, but for other crimes "the purposeful completion of the actor's conduct does not necessarily satisfy all the essential elements of the crime." The difference between the two groups of crimes is that the latter include "result" or "consequence" elements (e.g., death), while the former do not

contain "result" or "consequence" elements. In this case, we hold that a defendant, to be guilty under a theory of complicity, must have knowledge that the principal intends to engage in conduct that was a gross deviation from the standard of care that a reasonable person would exercise. Therefore, the presence or absence of "result" or "consequence" elements is not controlling.

theory of complicity is a logical and legal impossibility because it requires a finding that a complicitor knew that the principal intended to perpetrate an unintentional killing. A careful examination of the definitions in the criminal code reveals the fallacy in this argument.

As set forth above, criminally negligent homicide is "caus[ing] the death of another person by conduct amounting to criminal negligence." § 18–3–105, 8B C.R.S. (1986). Section 18–1–501(3) defines criminal negligence: "A person *acts* with criminal negligence when, through a gross deviation from the standard of care that a reasonable person would exercise, he fails to perceive a substantial and unjustifiable risk that a result will occur or that a circumstance exists." (Emphasis added.) When the definition of criminal negligence is added to the elements of criminally negligent homicide, the offense can be described as follows:

> A person commits criminally negligent homicide when he causes the death of another person by performing an act if, when he does the act, he fails to perceive a substantial and unjustifiable risk that a result will occur (namely, death) through a gross deviation from the standard of care that a reasonable person would exercise.

*See* §§ 18–1–501(3), –3–105, 8B C.R.S. (1986).

When doing the act which "amount[s] to criminal negligence," the principal need not intend to cause a specific result, death. What is required is that he voluntarily engage in an act and, while engaging in the act, he fails to perceive a risk that a result will occur through a gross deviation from the standard of care that a reasonable person would exercise.

■ Therefore, for a person to be guilty of criminally negligent homicide through a theory of complicity, he need not know that death will result from the principal's conduct because the principal need not know that. However, the complicitor must be aware that the principal is engaging in conduct that grossly deviates from the standard of reasonable care and poses a substantial and unjustifiable risk of death to another. In addition, he must aid or abet the principal in that conduct and, finally, death must result from that conduct. A verdict of guilty of criminally negligent homicide on a theory of complicity, therefore, does not involve an intent to promote or facilitate an unintentional act. *Cf. Thomas*, 729 P.2d at 975.

Accordingly, we reverse the judgment of the trial court and remand the case for the conviction to be reinstated.

ERICKSON, J., dissents.

ERICKSON, Justice, dissenting:

I respectfully dissent. In my view, the trial court correctly set aside the jury's verdict that found the defendant guilty of criminally negligent homicide under a complicity theory. A case should not be submitted to the jury unless there is competent evidence supporting each element of the crime charged. *See People v. Paris*, 182 Colo. 148, 511 P.2d 893 (1973). In this case there is no evidence that Mitchell Anderson, the principal, committed criminally negligent homicide. As such, there was no basis for finding that the defendant was a complicitor to criminally negligent homicide, since the principal did not commit that crime. Moreover, I agree with the trial court's statement that "[a] finding that a defendant ... had knowledge that another intended to perpetrate an unintentional killing is a logical impossibility." Accordingly, I would find that the jury's subsequent conviction of the defendant as a complicitor is not sustainable in this case.

The defendant's conviction does not, in my view, square with our criminally negligent homicide or complicity statutes. *See* §§ 18–3–105 & 18–1–603, 8B C.R.S. (1986). Under the theory of complicity, a defendant is legally accountable as a principal for the behavior of another if, with the intent to promote or facilitate the commission of the unlawful act, the defendant aids, abets, or advises the other person in planning or committing the act. § 18–1–603; *People v. Thompson*, 655 P.2d 416 (Colo.1982); *People v. R.V.*, 635 P.2d 892 (Colo.1981). In

*Thompson,* we said that in order to hold a defendant criminally responsible under the complicity statute "the prosecution must establish that (1) the principal committed the crime, (2) knowledge by the complicitor that the principal intended to commit the crime, and (3) the complicitor having the requisite knowledge, did aid, abet or encourage the principal in the commission of the crime." *Thompson,* 655 P.2d at 418; *see also People v. Larson,* 194 Colo. 338, 572 P.2d 815 (1977); *People v. Martin,* 192 Colo. 491, 561 P.2d 776 (1977); *People v. Marques,* 184 Colo. 262, 520 P.2d 113 (1974).

The issue raised is whether the evidence would support a conviction of Anderson for criminally negligent homicide because in my view, absent such evidence, Wheeler could not be guilty of being a complicitor to that crime. The act of the principal is the measure of whether a party is accountable as a complicitor. *See* § 18–1–603. The principal in this case, Mitchell Anderson, entered a plea of guilty to second-degree murder and was sentenced to twenty-four years in the department of corrections. Anderson took a large knife from his apartment, marched down to the decedent's apartment, told the decedent that he was going to kill him, and then proceeded to stab the victim, killing him.

Even though Anderson was guilty of second-degree murder, his conduct in no way could be construed as criminally negligent homicide. Criminally negligent homicide occurs when one causes the death of another through conduct amounting to criminal negligence. § 18–3–105. There was nothing negligent about Anderson's conduct. Rather, his behavior evidenced an intentional, methodical plan effectively conceived and executed.

Since Anderson's conduct would not support a conviction of criminally negligent homicide and Wheeler's acts do not alter her liability or that of Anderson, Wheeler could not be a complicitor to that crime. A complicitor's liability flows from the culpable act of the principal. The accountability of a complicitor to criminally negligent homicide arises because the principal committed the unlawful homicide and the complicitor assisted or aided in the unlawful act's commission. Since there is no evidence that Anderson committed criminally negligent homicide, Wheeler could not have assisted Anderson in the commission of that crime.

Moreover, a person cannot be a complicitor to criminally negligent homicide. "Any person who causes the death of another person by conduct amounting to criminal negligence commits criminally negligent homicide which is a class 5 felony." § 18–3–105. "A person acts with criminal negligence when, through a gross deviation from the standard of care that a reasonable person would exercise, he fails to perceive a substantial and unjustifiable risk that a result will occur or that a circumstance exists." § 18–1–501(3).

The statutory definition of criminal negligence coupled with that of criminally negligent homicide under section 18–3–105 creates criminal liability for an unintentional killing caused by the actor's failure to perceive a substantial and unjustifiable risk that a certain result will occur. *See People v. Nhan Dao Van,* 681 P.2d 932 (Colo. 1984); *People v. Jones,* 193 Colo. 250, 565 P.2d 1333 (1977); *People v. Hernandez,* 44 Colo.App. 161, 614 P.2d 900 (1980).[1] Thus, the act giving rise to criminal responsibility is by definition an unintentional one.

---

1. Both *Jones* and *Hernandez* were decided under section 18–3–105(1)(a), 8 C.R.S. (1973), the precursor to section 18–3–105, 8B C.R.S. (1986), under which the defendant was charged. Section 18–3–105(1)(a), 8 C.R.S. (1973), is substantially similar to section 18–3–105, 8B C.R.S. (1986), and provides:

> **18–3–105. Criminally negligent homicide.** (1) A person commits the crime of criminally negligent homicide if he causes the death of another person;

(a) By conduct amounting to criminal negligence.

*Nhan Dao Van* was decided under section 18–3–105, 8 C.R.S. (1978 & 1983 Supp.), which is substantially similar to section 18–3–105, 8B C.R.S. (1986), and provides:

> **18–3–105. Criminally negligent homicide.** Any person who causes the death of another person by conduct amounting to criminal negligence commits criminally negligent homicide which is a class 1 misdemeanor.

Criminally negligent homicide, when used as the basis for imposing responsibility for complicity, is a maverick. Nearly all homicide statutes have a specific or general intent requirement, while the criminally negligent homicide statute has none. *Compare* § 18–3–105 (criminally negligent homicide) *with* § 8–3–102(1)(a) (first degree murder); § 8–3–103(1)(a) (second-degree murder); and § 8–3–104(1)(a) (manslaughter). It is by definition an unintentional killing. This distinction between criminally negligent homicide and intentional homicides, or any other crime requiring intent, is significant for purposes of complicity responsibility.

The critical factor in imputing criminal responsibility under the complicity doctrine is the defendant's intent to promote or facilitate the commission of the unlawful act. § 18–1–603. I share the trial judge's view that it is not logical to hold that an accused complicitor intended to promote or facilitate unintentional conduct such as criminally negligent homicide. It is incongruous to say that one person intended to facilitate an act when the actor himself did not intend to commit that act. To hold otherwise bestows upon the accused complicitor prescient qualities, inasmuch as it implies that a complicitor can know and intend to assist a principal in unlawful conduct when the principal himself does not know he will engage in that conduct.

I also believe that the majority misapprehends *Thomas*. *Thomas* states that the intent necessary to commit attempted reckless manslaughter is the "intent to engage in and complete the risk producing act or conduct." *People v. Thomas*, 729 P.2d 972, 974 (Colo.1986). The majority reads this as analogous to the complicity statute's requirement that a complicitor need only act with the "intent to promote or facilitate the commission of the offense" to incur criminal liability. While I agree that the language of the cases is similar, I believe that the inherent difference between attempted reckless manslaughter and complicity to criminally negligent homicide causes the rationale of *Thomas* to be inapplicable to this case.

The "risk-producing act or conduct" involved in *Thomas* was reckless manslaughter. *Id.* at 973. There, we stated that a person can attempt to commit reckless manslaughter, since one can intend to take a substantial step towards reckless manslaughter. *Id.* at 974–75. The same cannot be said when the "risk-producing act or conduct" is unintentional. In *People v. Hernandez,* 614 P.2d 900 (Colo.App.1980), the court of appeals pointed out that a person cannot attempt to commit criminally negligent homicide because it is logically impossible to "intend to perpetrate an unintentional killing." *Id.* at 901. In my view it is also a logical impossibility for a person to be a complicitor to criminally negligent homicide because one cannot intend to assist or promote an unintentional killing.

I am disturbed by the majority's statement that a defendant is responsible as a complicitor if the defendant knew "that the principal is engaging in, or about to engage in, criminal conduct." Majority at 104. Under this dangerously broad statement a person who assisted a principal in what was originally agreed to be minor criminal conduct is fully liable for the principal's more serious criminal conduct even if the complicitor did not contemplate, assist or aid the more serious conduct. This result is not, in my view, reconcilable with the theory of complicity liability, which is to hold the complicitor liable only for those acts which he intended to assist. *See generally* 1 Torcia, *Wharton's Criminal Law* 180–81 (1978); Kadish, *From Complicity, Cause and Blame: A Study in the Interpretation of Doctrine,* 73 Calif.L.Rev. 323, 347–53 (1985). The criminal culpability of a complicitor, like that of an accessory, must be proportionate to his culpable intent and his participation in the commission of the principal's crime. The majority's statement that the defendant is guilty if she knew the principal was going to engage in any criminal conduct whatsoever creates a legally meaningless standard which circumvents the fact that the prosecution could not prove the defendant knew Anderson was going to commit second-degree murder or manslaughter. *See* § 18–1–603. The complicitor must have some basis for know-

ing she could suffer criminal responsibility. The majority's statement that the complicitor must be aware that the principal is engaging in conduct that grossly deviates from the standard of reasonable care and poses a substantial and unjustifiable risk of death to another is not consistent with the clear wording of the complicity and criminally negligent homicide statutes. §§ 18–1–603 & 18–3–105. As part of the test for complicity, I would require more than mere knowledge that a principal was about to deviate from a reasonable standard of care and engage in criminal conduct.

Accordingly, I would affirm the trial court's order setting aside the jury's verdict and the entry of a judgment of acquittal on the charge.