2012 COA 116

**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Kenneth Leon CHILDRESS,
Defendant–Appellant.**

No. 08CA2329.

Colorado Court of Appeals,
Div. VII.

July 19, 2012.

Rehearing Denied Sept. 27, 2012.

---

Affirmed in part, vacated in part, reversed in part, and remanded.

John W. Suthers, Attorney General, Corelle M. Spettigue, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge MILLER.

¶ 1 Defendant, Kenneth Leon Childress, appeals his judgment of conviction entered on a jury verdict finding him guilty of child abuse resulting in serious bodily injury, vehicular assault (driving under the influence (DUI)), driving while impaired by alcohol, reckless endangerment, reckless driving, and two counts of contributing to the delinquency of a minor. He also appeals the sentence imposed. We hold, as a matter of first impression in Colorado, that complicitor liability does not apply to the strict liability crime of vehicular assault (DUI) because the crime does not require a culpable mental state.

¶ 2 We also conclude that (1) under the facts presented, the trial court erred by failing either to require the prosecution to elect the transaction on which it relied for the child abuse conviction or to give the jury a modified unanimity instruction; and (2) the trial court must conduct further proceedings to determine whether the reason for substitution of a sentencing judge who did not preside over the trial was proper under Crim. P. 25.

¶ 3 We therefore vacate the vehicular assault conviction, reverse the child abuse conviction, affirm the other convictions, and remand the case for a new trial on the child abuse charge, further proceedings on sentencing, and correction of the mittimus.

## I. Background

¶ 4 Defendant has two sons, B.L. and K.C. B.L. was seventeen and K.C. was three at the time of the incidents that give rise to the charges here. Those incidents occurred over the Friday night and early Saturday morning of a weekend visitation defendant had with K.C. Defendant lived in Aurora, while B.L. was living in Lakewood with nineteen-year-old H.T., his girlfriend, who shared an apartment with defendant's girlfriend.

¶ 5 On Friday afternoon, defendant drove to H.T.'s apartment with K.C. because later that night her neighbor was going to have a party. The neighbor, H.T., B.L., and a majority of the other party guests were under the age of twenty-one. The party guests consumed large amounts of alcohol and used illegal drugs. At some point that night, defendant went out and purchased additional alcohol for the party.

¶ 6 Defendant also drank alcohol heavily all night and was stumbling and slurring his speech. Late Friday night or early Saturday morning, defendant took the keys to H.T.'s car and attempted to leave the party with K.C. After some discussion, B.L. and H.T. got into the back seat of H.T.'s car, and defendant drove them and K.C. to defendant's house in Aurora.

¶ 7 After arriving at defendant's house, the group learned that someone had pulled a gun at the party and they decided to return. B.L. took the keys from defendant and said that he would drive. Defendant got into the back seat with K.C. but did not place him in a car seat or a seatbelt. Testimony indicated that defendant urged B.L. to speed and disregard traffic signals. B.L. drove well over the speed limit and ran several red lights, eventually colliding with another vehicle and crashing into a building. K.C. sustained serious injuries in the accident, including a torn spleen, broken jaw, closed head injury, and facial lacerations that required multiple surgeries and could result in permanent disfigurement.

¶ 8 Defendant was charged with one count each of child abuse resulting in serious bodily injury, vehicular assault (DUI) and vehicular assault (reckless driving), DUI, reckless en-

dangerment, and reckless driving, and two counts of contributing to the delinquency of a minor.

¶ 9 The jury found defendant (1) not guilty of vehicular assault (reckless driving), (2) not guilty of DUI but guilty of the lesser included offense of driving while impaired by alcohol, and (3) guilty on all other counts. Defendant was sentenced to twenty-eight years in the Department of Corrections on the child abuse count, to be served concurrently with a six-year sentence for vehicular assault (DUI), a six-month jail sentence for driving while impaired, a six-month jail sentence for reckless endangerment, and a ninety-day sentence for reckless driving. Defendant also received two consecutive four-year sentences for two counts of contributing to the delinquency of a minor, to be served consecutively to his sentence for child abuse.

¶ 10 Defendant contends on appeal that (1) his vehicular assault conviction must be vacated because there cannot be complicitor liability for vehicular assault (DUI); (2) his conviction for child abuse must be reversed because the trial court failed to require a bill of particulars, require the prosecution to elect which act of child abuse supported his conviction, or, in the alternative, give a unanimity instruction; and (3) his sentences must be vacated because the judge who conducted his trial did not sentence him.

## II. Complicitor Liability for Vehicular Assault (DUI)

¶ 11 The prosecution argued that defendant was liable as a complicitor for both vehicular assault (DUI) and vehicular assault (recklessness). The jury acquitted defendant on the vehicular assault (recklessness) count but found him guilty of vehicular assault (DUI). Defendant contends that his conviction on the latter count should be vacated because a person cannot be held criminally liable as a complicitor for a strict liability crime. We agree that defendant's conviction for vehicular assault (DUI) must be vacated.

### A. Standard of Review

¶ 12 We interpret statutes de novo, giving effect to the intent of the General Assembly. *Dubois v. People*, 211 P.3d 41, 43 (Colo.2009).

Here, our construction of the complicity statute is informed by supreme court precedent.

### B. Analysis

¶ 13 Complicity is not a separate and distinct crime or offense, but rather is " 'a theory by which a defendant becomes accountable for a criminal offense committed by another.' " *Grissom v. People*, 115 P.3d 1280, 1283 (Colo.2005) (quoting *People v. Thompson*, 655 P.2d 416, 418 (Colo.1982)). The concept of complicitor, or accomplice, liability took root in the common law, *see United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938), and the common law did not generally recognize strict liability crimes. *See Morissette v. United States*, 342 U.S. 246, 251, 72 S.Ct. 240, 96 L.Ed. 288 (1952); *People v. Rostad*, 669 P.2d 126, 128 (Colo.1983). Colorado has codified the complicity doctrine in section 18–1–603, C.R.S.2011:

> A person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense.

§ 18–1–603. We are not writing on a blank slate in construing this statute, for the supreme court has already done so on several occasions.

¶ 14 In *Bogdanov v. People*, 941 P.2d 247, 251 (Colo.), *amended*, 955 P.2d 997 (Colo. 1997), *and disapproved of on other grounds by Griego v. People*, 19 P.3d 1, 8 (Colo.2001), the supreme court construed the statute and concluded that complicity is not a theory of strict liability. Instead, the court held that the complicity statute imposes a dual mental state requirement: the complicitor must (1) have "the *culpable* mental state required for the underlying crime committed by the principal," and (2) intend that his or her own conduct promote or facilitate the commission of the crime committed by the principal. *Id.* at 250–51 (emphasis added). The court reaffirmed the dual mental state requirement in *Grissom*, 115 P.3d at 1284–85, and divisions of this court have continued to apply that requirement. *See, e.g., People v. Alvarado,*

284 P.3d 99, 101–02 (Colo.App.2011); *People v. Bass*, 155 P.3d 547, 555 (Colo.App.2006).

¶ 15 For purposes of determining culpability requirements for offenses defined in the criminal code, "culpable mental state" is defined in section 18–1–501(4), C.R.S.2011, to mean "intentionally, or with intent, or knowingly, or willfully, or recklessly, or with criminal negligence." Thus, a culpable mental state can be unintentional to the extent one acts recklessly or with criminal negligence. The supreme court has accordingly applied the complicity statute to unintended underlying crimes involving criminal negligence, *People v. Wheeler*, 772 P.2d 101, 105 (Colo. 1989), and recklessness. *Grissom*, 115 P.3d at 1287–88.

¶ 16 Vehicular assault (DUI), however, is a strict liability crime. To be guilty of this crime, a person (1) must operate or drive a motor vehicle (2) while under the influence of alcohol or drugs, and (3) this conduct must be the proximate cause of serious bodily injury. *See* § 18–3–205(1)(b)(I), C.R.S., 2011. The statute does not refer to any type of culpable mental state. Instead, it specifies, "This is a strict liability crime." *Id.* And the General Assembly has made clear in section 18–1–502, C.R.S.2011, that culpable mental state and strict liability are mutually exclusive: "if an offense or some material element thereof does not require a culpable mental state on the part of the actor, the offense is one of 'strict liability.'" Therefore, the existence of a culpable mental state is simply not an element of the crime of vehicular assault (DUI).

¶ 17 The People argue that because no culpable mental state is required for the principal to violate the vehicular assault (DUI) statute, none is required for the complicitor either. This argument, however, would effectively amend the supreme court's language in *Bogdanov* to state that the complicitor "must simply have the same mental state as the principal," which here "is actually no mental state."[1] We decline to do so. The People's paraphrase of the supreme

court's language omits the term "culpable." Their argument would transform the complicity statute into a means of imposing strict liability on an alleged complicitor when the principal acts without a culpable mental state. This extension would be contrary to supreme court precedent. *See Bogdanov*, 941 P.2d at 251 ("the rule of *Wheeler* should only be applied to crimes defined in terms of recklessness or negligence").

¶ 18 As noted above, the supreme court has extended complicitor liability to some crimes for which the culpable mental state is not intentional—specifically for underlying crimes involving criminal negligence or recklessness. In *Wheeler*, 772 P.2d at 104, the court held that, in a prosecution for criminally negligent homicide, complicitor liability does not require that the complicitor intend for the principal to cause the harm prohibited by statute—there, death—if the defendant is "aware that the principal is engaging in conduct that grossly deviates from the standard of reasonable care and poses a substantial and unjustifiable risk of death to another." *Id.* at 105 (citing § 18–1–501(3), C.R.S. 2011). In *Grissom*, the court extended the holding in *Wheeler* to the crime of reckless manslaughter. 115 P.3d at 1288.

¶ 19 The supreme court, however, has expressly limited "the rule of *Wheeler*" to underlying crimes defined in terms of recklessness or negligence. *Bogdanov*, 941 P.2d at 251. The court in *Bogdanov* specifically disapproved of language in an opinion of another division of this court "that extends *Wheeler* beyond cases involving crimes of negligence or recklessness." *Id.* at 251 n. 9. Not surprisingly, the People have not cited, and we are not aware of, any reported Colorado appellate opinion that has applied the rule of *Wheeler* when the principal has committed a strict liability crime.

¶ 20 We recognize that the supreme court in *Grissom* observed that *Wheeler* is consistent with decisions from other jurisdictions holding that accomplice liability "extends to

---

1. The People cite *State v. Shaffer*, 1996 WL 518114 (Ohio Ct.App. No. 6–96–2, Sept. 11, 1996), to support their argument. We decline to follow this unpublished opinion of a division of the Ohio Court of Appeals. It construes a statute

with different wording than section 18–1–603 and does not cite any authority for its conclusion that the complicitor in that case could be held liable for commission of a strict liability offense by the principal.

*unintentional* crimes committed by the principal when the complicitor and the principal are acting in a 'common enterprise.' " 115 P.3d at 1284 (emphasis added). However, all six of the decisions from other jurisdictions relied upon by the court involved underlying crimes requiring negligent or reckless conduct. *Id.* (citing, in this order, *State v. Foster*, 202 Conn. 520, 522 A.2d 277, 284–85 (1987) (the defendant was properly convicted of criminally negligent homicide as an accomplice); *People v. Turner*, 125 Mich.App. 8, 336 N.W.2d 217, 218–19 (1983) (the defendant was properly convicted of aiding and abetting involuntary manslaughter where he gave a gun to the principal without a safety catch and told the principal to aim the gun at the victim "intentionally but without malice" and the gun then discharged, killing the victim); *State v. McVay*, 47 R.I. 292, 132 A. 436, 439 (1926) (the defendant could be held liable as an accessory before the fact to the crime of manslaughter arising through criminal negligence); *State v. Fennewald*, 339 S.W.2d 769, 771–74 (Mo.1960) (accomplice liability for manslaughter could apply to driver not involved in fatal accident where both parties were recklessly engaged in a drag race); *In re Clark*, 2004 WL 1615942, *8 (Ohio App.Ct. No. 04CA588, July 13, 2004) (unpublished opinion) (driver in a drag race who was not involved in fatal accident may be held liable for the other driver's reckless operation of a motor vehicle causing the death of another); *People v. Evans*, 124 Ill.App.3d 634, 80 Ill. Dec. 100, 464 N.E.2d 1083, 1088–89 (1984) (where one of the participants of a drag race collided with two other cars causing three deaths, the other participant, whose car was not involved in the accident, was a complicitor to reckless homicide)).

¶ 21 In light of the supreme court's reliance on these decisions and its emphasis in *Grissom* that complicitor liability extends to reckless and negligent crimes, with no reference to strict liability crimes, 115 P.3d at 1283, 1285, 1286, we conclude that the court's reference to "unintentional crimes" did not extend beyond those involving recklessness and criminal negligence.

¶ 22 *People v. Fisher*, 9 P.3d 1189 (Colo. App.2000), relied upon by the People, is dis-

tinguishable from the present case. The division in *Fisher* held that a person can be held criminally liable for felony murder under a theory of complicity. 9 P.3d at 1192. Felony murder does not require the principal to intend the death of the victim, but requires that the principal commit a predicate felony. *Id.* The crimes listed in the felony murder statute—arson, burglary, robbery, kidnapping, sexual assault, and escape, § 18–3–102(1)(b), C.R.S.2011—involve obvious culpable mental states. The division in *Fisher* concluded that, if a complicitor shared the culpable mental state for the predicate felony with the principal, he or she has satisfied both prongs of the dual mental state requirement. 9 P.3d at 1192.

¶ 23 Unlike the underlying crimes for felony murder, criminally negligent homicide, and reckless manslaughter, the crime of vehicular assault (DUI) requires no culpable mental state. Consequently, none of the decisions discussed—*Wheeler, Bogdanov, Grissom, Fisher*, and the out-of-state cases relied upon by the supreme court in *Grissom*—supports applying Colorado's complicity statute "beyond cases involving crimes of negligence or recklessness." *Bogdanov*, 941 P.2d at 251 n. 9. We read the supreme court's language in *Bogdanov* and *Grissom* as preventing us from doing so here.

¶ 24 Our holding does not preclude prosecution of the type of conduct allegedly engaged in by defendant in this case. He was prosecuted for vehicular assault (recklessness), which is not a strict liability claim, but found not guilty by the jury. He was also found guilty of contributing to the delinquency of two minors (K.C. and B.L.), driving while impaired by alcohol, reckless endangerment, and reckless driving. And, as discussed in Part III. of this opinion, he can also be retried for child abuse resulting in serious bodily injury for allowing K.C. to ride unrestrained while B.L. drove recklessly. We merely decline to extend the supreme court's construction of Colorado's complicity statute to reach the underlying crime of vehicular assault (DUI), which involves neither an intentional, reckless, nor negligent mental state.

¶ 25 We therefore vacate defendant's conviction for vehicular assault (DUI).

### III.   Child Abuse

¶ 26 Defendant contends that his conviction for child abuse must be reversed because the trial court erred by not requiring a bill of particulars and by not requiring the prosecution to elect which act supported the child abuse count, or alternatively, instructing the jury that it must unanimously agree on the act that constituted child abuse. We agree that reversal is required.

■ ¶ 27 Whether a defendant is denied due process by the prosecution's failure to elect the particular act on which it relies is a question of law reviewed de novo. *Quintano v. People,* 105 P.3d 585, 592 (Colo.2005).

■ ¶ 28 Both the United States and Colorado Constitutions grant an accused the right to a jury trial. U.S. Const. amends. VI, XIV; Colo. Const. art. II, §§ 16, 25. By statute in Colorado, the verdict must be unanimous. § 16–10–108, C.R.S.2011. The trial court must properly instruct the jury to ensure that a conviction on any count is the result of a unanimous verdict. *People v. Rivera,* 56 P.3d 1155, 1160–61 (Colo.App.2002).

■ ¶ 29 When evidence of several acts is presented at trial, any one of which would constitute the basis for the single offense charged, the trial court may take one of two actions: (1) require the prosecution to elect the transaction on which it relies for the conviction, or (2) give the jurors a modified unanimity instruction telling them that they must unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts described in the evidence. *Quintano,* 105 P.3d at 592–93. Otherwise, where "[s]ome of the jurors may have decided to convict on one act, while others may have decided to convict on another," "it is impossible to be reasonably certain of the reliability of the judgment of conviction." *Woertman v. People,* 804 P.2d 188, 192 (Colo.1991).

¶ 30 Under section 18–6–401(1)(a), C.R.S. 2011, a person commits child abuse if he or she (1) causes an injury to a child's life or health, (2) permits a child to be unreasonably

placed in a situation that poses a threat of injury to the child's life or health, or (3) engages in a pattern of conduct that results in an accumulation of injuries that ultimately results in the death of a child or serious bodily injury. The single child abuse count in the complaint charged defendant alternatively under the first two prongs by alleging that he had knowingly or recklessly caused an injury to K.C. *or* permitted K.C. to be unreasonably placed in a situation that posed a threat of injury to K.C.'s life or health and that resulted in serious bodily injury to K.C.

¶ 31 The jury had before it extensive evidence of child abuse. The prosecution presented evidence that defendant took K.C. to a party where underage drinking and drug use was occurring, forced K.C. to drink alcohol, placed K.C. in a dryer and closed the door, and took K.C. out in the cold without proper clothing.

¶ 32 The jury also heard testimony about two different car trips taken that night. On the first trip, defendant drove across the metropolitan Denver area from the party to his house. There was testimony that defendant was drunk, collided with a pole, sped, swerved between cars, passed cars on both the left and right medians, and drove on the shoulder, all while K.C. was in the car unrestrained by a car seat or, for part of the time, even a seatbelt.

¶ 33 On the second trip, B.L. drove back to the party. Testimony indicated that defendant placed K.C. in the back seat of the car and rode next to him on the trip, but did not restrain him with a seatbelt or a car seat. B.L. did not have a driver's license, sped, swerved in and out of cars, performed an illegal U-turn, ran multiple red lights, collided with another car, and crashed into a building. Finally, B.L.'s blood alcohol level exceeded the legal limit when tested several hours after the accident. K.C. received his injuries in this accident.

¶ 34 Both before and during trial, defendant repeatedly argued that the prosecution needed to clarify which specific act it relied on to support this single count. Defendant sought and was denied a bill of particulars. He asked for a lesser included offense in-

struction in tandem with a causation instruction. Together, these instructions would have permitted the jury to find that defendant had committed an act of child abuse that did not result in serious bodily injury if it determined that the acts of child abuse committed by defendant did not cause K.C.'s injuries.[2] The trial court declined to give either instruction, concluding that, in its view, "[p]utting [K.C.] in the position to be injured in the automobile accident" was "the basis for the child abuse charge."

¶ 35 Finally, defendant requested a unanimity instruction. He argued that a unanimity instruction was required because several of his acts on the night in question could form the basis of the child abuse count. The trial court requested, and defendant tendered, a modified unanimity instruction. The trial court declined to give the tendered instruction to the jury, without providing any additional reasons on the record.

¶ 36 Ultimately, the prosecution chose to seek a conviction for child abuse on the theory that defendant had recklessly or knowingly allowed K.C. to be placed in a situation that posed a threat of serious bodily harm. The jury was instructed that the elements of knowing or reckless child abuse are:

1. That the defendant
2. In the state of Colorado, at or about the date and place charged,
3. Knowingly or recklessly
4. Permitted a child, namely [K.C.] to be unreasonably placed in a situation that posed a threat of injury to the child's life or health,
5. Which resulted in serious bodily injury to [K.C.].[3]

The jury was also separately instructed:

Each verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree to it. Each Verdict must be unanimous.

You will be provided with verdict forms as to each charge. When you have unanimously agreed upon your verdict you will select the portion of each form which reflects your verdict.

¶ 37 We conclude that the prosecution presented several acts that could form the basis of child abuse under section 18–6–401(1)(a) and that the instructions given here did not ensure that the jury's verdict was unanimous. We base this conclusion in part on the manner in which the prosecution presented its case. As noted, evidence was presented of several acts defendant undertook that could be considered child abuse, including taking K.C. to a party where there was alcohol and drug use and giving K.C. alcohol. The two most egregious of the acts, if true, were defendant's drunk and reckless driving with K.C. in the car and allowing K.C. to ride in the car while an unlicensed and intoxicated B.L. drove. The trial court recognized that the prosecution had not declared which act it relied on to support the child abuse count, but believed that the prosecution relied upon defendant's act of allowing K.C. to ride in the car while B.L. drove recklessly.

¶ 38 However, the prosecution's closing argument regarding child abuse did not refer to B.L.'s driving. The prosecution's entire discussion of the evidence proving that defendant had recklessly placed K.C. in a dangerous situation was as follows:

This doesn't have to be a case where [defendant] smacked [K.C.] too hard, or where he hurt himself. He simply has to have placed that child or permitted that child to be placed in a scenario that was posing a threat to that child's life or ... his health.

The situations that [defendant] placed [K.C.] in were a few. First, he brought [K.C.] down from his place in Aurora to a party in Lakewood. Party where there was drinking and drugs and guns. Certainly dangerous situations. He then put [K.C.] in the car without a car seat. Cer-

---

2. Knowing or reckless child abuse that does not result in an injury is a class two misdemeanor, while knowing or reckless child abuse resulting in serious bodily injury is a class three felony. *Compare* § 18–6–401(7)(b)(I), C.R.S.2011, *with* § 18–6–401(7)(a)(III), C.R.S.2011.

3. Defendant does not dispute that K.C.'s injuries constitute serious bodily injury.

tainly dangerous, certainly reckless. Made even more reckless by what he did next, which is to drive that car recklessly. Fast. Weaving in and out of traffic. Narrowly avoiding embankments on the side of the road. Goes at speed that will allow him to get from Lakewood to Aurora in 25 minutes, about half the time it would normally take to make that trip.

He didn't just allow [K.C.] to be placed in that situation, he put [K.C.] in that situation. And he wasn't unaware that [K.C.] was at risk. He was given a child seat. A child seat that he was to use in case he needed to drive [K.C.]. Consciously disregarding it. Put it aside.

Last, that that [sic] situation resulted in serious bodily injury to [K.C.]. This is where you're going to have to look at that evidence. We believe it's plain as day.

¶ 39 After some additional discussion of K.C.'s injuries, the prosecution moved on to the other charges.

¶ 40 Thus, in arguing the child abuse charge, the prosecution pointed to three incidents supporting the contention that defendant placed K.C. in "a scenario that was posing a threat to that child's life or ... his health":

- Defendant drove K.C. from his house in Aurora to a party in Lakewood where there was drinking, drugs, and guns;
- After being at the party for a time, defendant put K.C. in the car without a car seat; and
- He then drove that car recklessly at high speeds back to the house in Aurora.

Absent from this list is any reference to B.L.'s driving the car back to Lakewood, the drive that ended in the accident causing K.C.'s injuries. While the prosecution discussed B.L.'s driving in connection with the complicity charges, its closing argument never linked B.L.'s driving to the child abuse charge.

¶ 41 It is likely that one or more jurors may have based their decision on child abuse on the incident involving B.L.'s drive back to the party. However, the prosecution invited the jury to convict defendant on other conduct, both through its closing argument and

the admission of evidence of numerous other incidents that some jurors might consider as child abuse, including defendant's reckless drive to Aurora. Some jurors reasonably may have concluded that this incident "resulted in" K.C.'s serious bodily injuries because it set up B.L.'s return trip, which ended in the accident. Thus, in the absence of an appropriate modified unanimity instruction, some of the jurors may have decided to convict on some acts, while others may have decided to convict on others, thus making it impossible to be reasonably certain of the reliability of the verdict. *See Woertman*, 804 P.2d at 192.

¶ 42 The People, however, contend that the jury instructions given were sufficient to ensure that the jury's verdict was unanimous. They argue that because the instructions required the act supporting defendant's conviction to both pose a threat of and result in serious bodily injury, the jury must have unanimously found that the only act that resulted in serious bodily injury—the act of allowing K.C. to ride in the car while B.L. drove—provided the basis for the jury's verdict.

¶ 43 This contention is undermined by the combination of the prosecution's closing argument, the extensive evidence, and the instructions given to the jury. The only instruction mentioning a unanimous verdict was not sufficient to ensure that the jury unanimously agreed on which act of child abuse defendant committed that caused serious bodily injury. This instruction only informed the jury that each verdict on each charge must be unanimous, and did not inform the jury that it was required to agree on the specific act supporting each verdict. The trial court erred by not providing the jury with a modified unanimity instruction requiring it to agree on the act supporting the conviction or find that defendant had committed every alleged act of child abuse.

¶ 44 Therefore, we reverse defendant's conviction for child abuse because we cannot be reasonably certain that defendant was found guilty by a unanimous jury. *See id.; see also People v. Gookins*, 111 P.3d 525, 528 (Colo.App.2004) (citing *Woertman*).

## IV. · Remaining Issues

### A. Sentencing

¶ 45 Defendant contends that his sentence should be vacated because the judge who sentenced him was not the judge who presided over his trial. We conclude that the matter requires further action by the sentencing court.

¶ 46 The parties agree, as do we, that defendant timely asserted his objection in the trial court and that we review de novo whether the sentencing by a substitute judge violated Crim. P. 25. *See People v. Romero,* 197 P.3d 302, 305 (Colo.App.2008) (whether the trial court misconstrued a rule of criminal procedure is a question of law subject to de novo review).

¶ 47 The senior judge who presided over defendant's trial was not present at defendant's sentencing. The judge who conducted the sentencing hearing did not provide a reason for the senior judge's absence, indicating only that the other judge had been "unavoidably detained" and "was not going to be able to make it" because of "circumstances that arose simply [that] morning." The sentencing judge had been assigned the case for trial, but because of a scheduling conflict, trial of this case was reassigned to the senior judge. When the senior judge did not appear for the sentencing hearing, the sentencing judge stated that she was comfortable sentencing defendant because she had heard motions in the case and refreshed her knowledge of the facts by reviewing the file.

¶ 48 Crim. P. 25 provides in pertinent part:

> If by reason of absence from the district, death, sickness, or other disability, the judge before whom the defendant was tried is unable to perform the duties to be performed by the court after a verdict or finding, any other judge regularly sitting in or assigned to the court may perform those duties.

This rule encourages the better practice of having the judge who presided over a criminal trial also impose the sentence. *See People v. Brewster,* 240 P.3d 291, 301 (Colo.App.

2009). If a substitution is made between trial and sentencing, the reasons for the substitution must be part of the record. *People v. Little,* · 813 P.2d 816, 818 (Colo.App.1991).

¶ 49 We conclude that the sentencing judge's explanation for the absence of the trial judge was inadequate under Crim. P. 25. Furthermore, we conclude that the sentencing judge erroneously found that she was authorized to sentence defendant because she had heard motions and reviewed the record. *See People v. Koehler,* 30 P.3d 694, 697 (Colo.App.2000) ("Motions hearings, even cumulatively, are narrowly focused on the legal and factual disputes germane to the motion, while a trial · is broad in scope and addresses the charges on their merits.").

¶ 50 In *Little,* a division of this court faced a similar situation and concluded that remand was necessary to determine the reason for the substitution. 813 P.2d at 817–18. The division provided that if, on remand, the trial court determined that the reason was one specified by Crim. P. 25, the sentence was to be affirmed. *Id.* at 818. If not, however, the sentence was to be vacated and the defendant resentenced by the judge who had presided over the trial. · *Id.; see also Brewster,* 240 P.3d at 301–02.

¶ 51 We conclude that the reasoning in *Little* is persuasive and that remand is required here because the record does not indicate the reason for the substitution. If on remand the sentencing judge finds that the reason was the senior judge's absence from the district, sickness, or other disability, the sentences for the two counts of contributing to the delinquency of a minor, driving while impaired, and reckless driving shall stand affirmed, subject to defendant's right to appeal that finding. If the substitution was for another reason not permitted by Crim. P. 25, the sentences for these counts shall be vacated and defendant shall be resentenced by the senior judge who presided over his trial. However, if the sentencing judge finds that the senior judge is unable, for any of the reasons specified in Crim. P. 25, to preside over the resentencing, the sentences for the counts shall stand affirmed, again subject to defendant's right to appeal that finding.

## B. Mittimus

¶ 52 We also note that the mittimus in this case is incorrect. It states that defendant was found guilty of driving under the influence, under section 42–4–1301(1)(a), C.R.S. 2011. However, the verdict form indicates that the jury found defendant guilty of driving while impaired by alcohol under section 42–4–1301(1)(b), C.R.S.2011. On remand, the trial court shall correct the mittimus to accurately represent the jury's verdict. *See* Crim. P. 36.

## V. Conclusion

¶ 53 Therefore, the judgment is vacated as to defendant's conviction for vehicular assault (DUI), reversed as to his conviction for child abuse, and affirmed as to the other convictions. The case is remanded for a new trial on the child abuse charge, correction of the mittimus, and further proceedings as specified in part IV.A. of this opinion.

Judge ROMÁN and Judge RICHMAN concur.